STATE OF NORTH CAROLINA v. EDGAR SIMON

No. COA06-1483

(Filed 7 August 2007)

**1. Contempt— indirect criminal contempt—violation of formal written order not required**

The trial court did not err by holding defendant in indirect criminal contempt of court even though defendant contends he did not violate a formal written order when he visited the office of the trial court administrator in violation of the trial court's directive to stay out of the judges' office area, because: (1) N.C.G.S. § 5A-11(a)(3) does not limit criminal contempt to violation of a formal written order that has been entered and filed with the clerk of court; and (2) although defendant cites a case for his position to the contrary, the defendant in that case was held in civil contempt which is restricted by N.C.G.S. § 5A-21(a) to the failure to comply with an order of a court.

**2. Contempt— indirect criminal contempt—sufficiency of evidence**

The trial court did not err by holding defendant in indirect criminal contempt of court even though defendant contends there was insufficient evidence to support the finding, because: (1) defendant concedes that Judge Albright's admonition to defendant on June 23 directed defendant to comply with Judge Spivey's previous order, and thus the practical effect of the show cause order is the same as if it had noticed Judge Spivey's order when it incorporated Judge Spivey's instructions in its directive to defendant; (2) defendant admitted at trial and on appeal that on 26 June 2006 he entered the courthouse area marked "Judges Office" to hand deliver a document to the trial court administrator; (3) there was sufficient evidence that defendant knew he was to stay out of the judges' office area where the trial court administrator's office was located, particularly since he admitted having been warned that the area was restricted; and (4) the case management plan says nothing about hand-delivering motions, and

defendant offers no explanation for his failure to simply leave with the Clerk of Court his emergency motion addressed to the trial court administrator.

### 3. Contempt— indirect criminal contempt—burden of proof

The trial court did not err in an indirect criminal contempt case by allegedly placing the burden on defendant to prove that he was not in contempt of court rather than requiring the State to prove beyond a reasonable doubt that defendant was in contempt, because: (1) although defendant is correct that the State has the burden to prove the facts that form the basis of the contempt charge, in the instant case defendant admitted to the underlying facts that on 26 June 2006 he entered the judges' office area of the courthouse, that he had been directed by Judge Albright to comply with Judge Spivey's clear instruction not to go to the judges' offices, and that Judge Albright had told him to stay out of the judges' offices; (2) there was no issue of fact to be decided, and thus no burden of proof was placed on defendant; (3) the only issue before the trial court was a ·question of law involving whether defendant's admitted behavior constituted indirect criminal contempt; and (4) the trial court properly required proof beyond a reasonable doubt of defendant's contempt of court, and its order states the facts were found beyond a reasonable doubt.

Appeal by defendant from judgment entered 9 August 2006 by Judge C. Philip Ginn in Forsyth County Superior Court. Heard in the Court of Appeals 6 June 2007.

*Attorney General Roy Cooper, by Special Deputy Attorney General Grady L. Balentine, Jr. , for the State.*

*Don Willey, for defendant-appellant.*

SMITH, Judge.

Edgar Simon (defendant) appeals from judgment entered upon the trial court's order holding him in indirect criminal contempt of court. We affirm.

The pertinent facts may be summarized as follows: Defendant was previously involved in a civil action designated a special proceeding in Forsyth County, North Carolina, the details of which are not at issue in the present appeal. *See* N.C. Gen. Stat. § 1-3; and

§ 1A-1, Rule 2 (2005). On 11 May 2006 a hearing was held in the special proceeding before Forsyth County Superior Court Judge Ronald E. Spivey. During this hearing, Judge Spivey instructed defendant as follows:

> JUDGE SPIVEY: . . . [T]he Court will find that during the pendency of this action . . . the respondent has been a frequent caller to the judge's office. The staff reports to me, as I stepped out to prepare this judgment, that at times [he has made] as many as 20 phone calls a week in addition to letters, faxes, and personal visits to the judge's office.
>
> The respondent has also been discovered to be in secure areas of the courthouse, behind courtroom 5A of criminal court where prisoners are transported and when asked to leave, he was grudgingly compliant and questioned the authority of our staff to ask him to leave a secured area.
>
> . . . .
>
> Based on these facts, the Court would direct that the respondent not call the judge's office about this case any further. . . . Any additional filings may be made with the clerk's office or whatever appropriate office and he should not fax or come to the judge's office to speak to any staff about this case.

On 20 June 2006 defendant faxed an "Affidavit of Personal Bias" in the special proceeding to Senior Resident Superior Court Judge of Forsyth County Judson D. Deramus, Jr., wherein he complained that Judge Spivey had "strongly admonish[ed him] to not call, send faxes or letters to court staff and to not visit the judges office of the courthouse." On 23 June 2006, defendant appeared before Emergency Superior Court Judge W. Douglas Albright, in the special proceeding, who reviewed defendant's letter to Judge Deramus, and reiterated Judge Spivey's instructions to defendant:

> JUDGE ALBRIGHT: . . . There's a file in here that Judge Spivey admonished you not to call or send faxes. . . . [H]e admonished you. That's the same way to say he ordered you—
>
> MR. SIMON: He did.
>
> THE COURT: —not to call, not to send faxes, not to send letters to the court staff, and not to visit the judges' office. . . . [D]on't put yourself in a position where the Court's going to have to take action[.]

On 26 June 2006 defendant went to the judges' office area on the fifth floor of the Forsyth County Courthouse, to hand-deliver an emergency motion for a temporary restraining order in the special proceeding to the trial court administrator. In order to do this, defendant entered the courthouse area set aside for the judges' chambers and separated from the rest of the courthouse by a door marked "Judges Offices." On the same day, Judge William Z. Wood, Jr., of the Forsyth Superior Court issued a Show Cause Order in the case *sub judice* stating in pertinent part:

> . . . [T]he above named individual was ordered on June 23, 2006 by the Honorable Judge W. Douglas Albright, to stay away from the Forsyth County trial administrator's office. This office is located on the fifth floor of the Forsyth County Hall of Justice building in Winston-Salem, N.C. On June 26, 2006 the above named defendant did appear in the Forsyth County [trial] administrator's office. This appearance is in direct violation of Judge Albright's previous order.

A hearing was conducted on the Show Cause Order before Judge C. Philip Ginn in Forsyth County Superior Court on 9 August 2006. On that date, Judge Ginn entered an order finding defendant in indirect criminal contempt of court. In a Judgment Suspending Sentence of even date, defendant received a suspended thirty day sentence and was placed on supervised probation. From this judgment and commitment, defendant appeals.

### Standard of Review

Defendant appeals from judgment entered upon an order holding him in criminal contempt. A contempt hearing is a non-jury proceeding. "The standard of appellate review for a decision rendered in a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary." *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163 (2001) (citations omitted). "The trial court's conclusions of law drawn from the findings of fact are reviewable de novo." *Curran v. Barefoot*, 183 N.C. App. 331, 335, 645 S.E.2d 187, —— (2007) (citing *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980)).

**STATE v. SIMON**

[185 N.C. App. 247 (2007)]

**[1]** Defendant first argues that the trial court erred in finding him in criminal contempt of court, on the grounds that "[n]either Judge Albright's June 23, 2006 oral directive for the defendant to comply with Judge Spivey's prior order nor Judge Spivey's May 11, 2006 order were ever reduced to writing, signed by the judge nor filed with the clerk[.]" Defendant asserts that one cannot be held in criminal contempt of court unless he violates a formal written order. We disagree.

"At the outset we note that contempt in this jurisdiction may be of two kinds, civil or criminal[.] . . . Criminal contempt is generally applied where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice." *O'Briant v. O'Briant,* 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985) (citing *Blue Jeans Corp. v. Clothing Workers,* 275 N.C. 503, 508-09, 169 S.E.2d 867, 869 (1969)). "Accordingly, 'criminal [contempt] proceedings are those brought to preserve the power and to vindicate the dignity of the court and to punish for disobedience of its processes or orders.' " *State v. Randell,* 152 N.C. App. 469, 473, 567 S.E.2d 814, 817 (2002) (quoting *State v. Reaves,* 142 N.C. App. 629, 632-33, 544 S.E.2d 253, 256 (2001)).

Direct criminal contempt is "committed within the sight or hearing of a presiding judicial official[,]" N.C. Gen. Stat. § 5A-13(a)(1) (2005), while indirect criminal contempt "arises from matters not occurring in or near the presence of the court, but which tend to obstruct or defeat the administration of justice." *Atassi v. Atassi,* 122 N.C. App. 356, 361, 470 S.E.2d 59, 62 (1996). N.C. Gen. Stat. § 5A-13(b) (2005). Defendant herein was alleged to be in indirect criminal contempt of court, for visiting the office of the trial court administrator in violation of the trial court's directive to stay out of the judges' office area.

Under N.C. Gen. Stat. § 5A-11(a)(3) (2005), criminal contempt includes "[w]illful disobedience of, resistance to, or interference with a court's lawful process, order, directive, or instruction or its execution." The statute does not limit criminal contempt to violation of a formal written order that has been entered and filed with the clerk of court. This is consistent with the role of criminal contempt proceedings in protecting the authority and dignity of the court. The range of actions tending to undermine respect for the court or impair the proper administration of justice will include many circumstances that are not the subject of formally filed orders. For example, a trial court may employ criminal contempt proceedings in response to a loud or disrespectful attorney, witness, or spectator.

We conclude that a finding of criminal contempt, direct or indirect, does not require that the relevant "process, order, directive, or instruction" be a formal written order. Nor have our appellate opinions ever imposed such a requirement. *See, e.g., State v. Pierce*, 134 N.C. App. 148, 152, 516 S.E.2d 916, 919 (1999) (juror who researched certain issues in the case found in contempt of court because it was "undisputed that Judge Cornelius directed the jury not to discuss the case with anyone outside the courtroom and not to conduct their own investigations"); *State v. Wall*, 49 N.C. App. 678, 272 S.E.2d 152 (1980) (defendant held in criminal contempt of court for urging a witness to disobey a subpoena that would be issued in the future).

In support of his position to the contrary, defendant cites only *Onslow County v. Moore*, 129 N.C. App. 376, 499 S.E.2d 780 (1998). However, the defendant in *Onslow County* was held in civil contempt. Unlike criminal contempt, the definition of civil contempt is restricted by N.C. Gen. Stat. § 5A-21(a) (2005) to the failure to "comply with an order of a court[.]" (emphasis added).

We believe it to be the better practice for a trial court to put an instruction or directive in writing, especially if the order is to remain effective after the completion of the proceeding or matter then before the court. However, we conclude that G.S. § 5A-11(a)(3) does not require that a finding of criminal contempt be predicated upon the failure to obey a written order. This assignment of error is overruled.

---

[2] Defendant next argues there was insufficient evidence to support the trial court's finding him in contempt of court. He contends that (1) "there is not competent evidence of record . . . that the defendant violated any provision of the orders of Judges Albright or Spivey"; (2) "there is insufficient evidence . . . [that] defendant knowingly and willfully violated the oral orders or admonishments"; and (3) "his conduct in delivering an emergency motion to the trial court administrator on June 26, 2006 was not done after clear warning that such conduct was improper[.]" We disagree.

Preliminarily, we note that the show cause order alleges defendant's violation of Judge Albright's order of 23 June 2006, and does not reference Judge Spivey's order of 11 May 2006, or provide notice that defendant was in contempt of Judge Spivey's order. Thus, the trial court's subject matter jurisdiction was limited to consideration of whether defendant was in contempt of Judge Albright's instructions.

However, defendant concedes that "Judge Albright's admonition to the defendant on June 23 directed the defendant to comply with Judge Spivey's previous order. Judge Albright's directive required the defendant to comply with the prior order[.]" Thus, the practical effect of the show cause order is the same as if it had noticed Judge Spivey's order, because Judge Albright incorporated Judge Spivey's instructions in his directive to defendant.

Judge Spivey's instructions to the defendant on 11 May 2006 included in relevant part the following:

> . . . [T]he Court will find that . . . the respondent has been a frequent caller to the judges' office . . . in addition to letters, faxes, and personal visits to the judge's office. The respondent has also been discovered to be in secure areas of the courthouse[.] . . .

> Based on these facts, the Court would direct that the respondent not call the judge's office about this case any further. . . . Any additional filings may be made with the clerk's office or whatever appropriate office and he should not fax or come to the judge's office to speak to any staff about this case.

Judge Spivey's directive was repeated by Judge Albright at the hearing conducted 23 June 2006, wherein Judge Albright stated in pertinent part that defendant was "not to call, not to send faxes, not to send letters to the court staff, and not to visit the judges' office."[1]

Defendant admitted at trial and on appeal that on 26 June 2006 he entered the courthouse area marked "Judges Office" to hand deliver a document to the trial court administrator. We conclude that the trial court's determination, that this violated Judge Albright's order, was supported by competent evidence. We reject defendant's arguments to the contrary.

Defendant argues that he had no clear warning that he was prohibited from delivering a document to the trial court administrator, even though the trial court administrator's office was in the judges' office area of the courthouse. This assertion is belied by the defendant's own letter to Judge Deramus on 20 June 2006, wherein he wrote in relevant part that:

---

1. The quoted statements are found in the fragment of transcript on page 28 of the record. We assume this is from the hearing before Judge Albright, because it is dated 23 June 2006, the date defendant was before Judge Albright. However, we remind defendant of his duty to prepare the appellate record properly, in order to eliminate potential ambiguities.

I, Edgar A. Simon, Jr., am the defendant in the above referenced case. . . . For an extended period of time, I was permitted to enter the 5th floor area of the courthouse where the Trial Court Administrator was located[.] . . . I entered that area approximately one month ago, unaware that <u>the area had been designated as off-limits to other than court staff, since my last visit.</u> . . . [When] a clerk approached me[.] . . . I asked her where I should go to file my calendar request, now that this area was restricted[.] . . . [O]n May 11, 2006, <u>Judge Ronald E. Spivey . . . strongly admonish[ed] me to not call, send faxes or letters to court staff and to not visit the judges office of the courthouse.</u> . . .

(emphasis added). Defendant asserts that the "single act of contempt" referenced in the Show Cause Order—defendant's visit to the trial administrator's office to personally deliver a document—did not violate Judge Albright's order. However, defendant's letter states that Judge Spivey told him not to "visit the judges office of the courthouse," and defendant admitted at the contempt hearing that Judge Albright told him "you are not to go to the judges' office, [or] visit the judges' office." It is undisputed that the trial court administrator's office was in the same part of the courthouse as the judges' offices, and that on 26 June 2006 defendant was in the courthouse area marked "Judges Office" to hand-deliver a document to the trial court administrator. We conclude that there was sufficient evidence that defendant knew he was to stay out of the judges' office area where the trial court administrator's office was located, particularly since he admitted having been warned that the area was "restricted."

Defendant also argues that, notwithstanding his 26 June 2006 entry into the judges' office section of the courthouse, he should not have been held in contempt because his purpose for being there was to leave an emergency motion for the trial court administrator. Defendant justifies his actions on the basis that Judge Spivey had told him that "additional filings may be made with the clerk's office or whatever appropriate office[.]" Defendant directs our attention to the Case Management Plan for Forsyth County, which provides that emergency motions should be "<u>addressed</u> to the Trial Court Administrator for calendaring." (emphasis added). On this basis, defendant contends that it was proper for him to personally deliver his motion. However, the case management plan says nothing about hand-delivering motions, and defendant offers no explanation for his failure simply to leave with the Clerk of Court his emergency

motion addressed to the trial court administrator. This assignment of error is overruled.

---

**[3]** Finally, defendant argues that the trial court erred by placing on him the burden of proving that he was not in contempt of court, rather than requiring the State to prove beyond a reasonable doubt that defendant was in contempt. We conclude that the trial court did not shift the burden of proof to defendant.

Defendant is correct that in a criminal contempt proceeding, as in any other criminal proceeding, the State has the ultimate burden of proof beyond a reasonable doubt of all elements of the offense. "On a hearing for criminal contempt, the State must prove all of the requisite elements under the applicable statute, beyond a reasonable doubt." *State v. Key,* 182 N.C. App. 624, 628, 643 S.E.2d 444, 448 (2007). However, " '[s]tipulations duly made during the course of a trial constitute judicial admissions binding on the parties and dispensing with the necessity of proof[.]' " *City of Brevard v. Ritter,* 285 N.C. 576, 580-81, 206 S.E.2d 151, 154 (1974) (where defendant admits actions in violation of order the burden shifts to defendant "to show compliance in order to purge himself of the contempt citation") (quoting [28] STRONG, N.C. INDEX [4TH], TRIAL, § [139] STIPULATIONS).

Defendant's assertion that he was subjected to an improper burden of proof is based on his quotation, out of context, of a few fragments of the transcript. Defendant directs our attention to the following exchange occurring before the hearing:

THE COURT: Is this not a show-cause hearing? Was this not one where you were ordered to come in and show cause?

MS. MASSEY (Defense Counsel): Yes sir.

TRIAL COURT: Well, that puts the burden on you to present evidence.

Thereafter, the court recessed for several hours before conducting the hearing. At the beginning of the hearing, the following dialog took place:

TRIAL COURT: . . . Ms. Massey, you're representing Mr. Simon, is that correct, in this matter after having been appointed by the Court?

MS. MASSEY: Yes, Your Honor.

TRIAL COURT: Does he admit or deny the allegations in the show-cause order?

MS. MASSEY: Judge, as I have indicated to the Court and (the prosecutor) earlier, he admits the actions but denies that it is contempt.

TRIAL COURT: All right. Then let him show cause why it is not contempt.

(emphasis added). Defendant is correct that the State has the burden to prove the facts that form the basis of the contempt charge. N.C. Gen. Stat. § 5A-15(f) (2005) ("If the person is found to be in contempt, the judge must make findings of fact and enter judgment. The facts must be established beyond a reasonable doubt."). However, in the instant case, defendant admitted to the underlying facts that (1) on 26 June 2006 he entered the judges' office area of the courthouse; (2) that he had been directed by Judge Albright to comply with Judge Spivey's clear instruction not to go to the judges' office; and (3) that Judge Albright had told him to stay out of the judges' offices.

Accordingly, there was no issue of fact to be decided, and thus no burden of proof placed on defendant. The only issue before the trial court was a question of law—whether defendant's admitted behavior constituted indirect criminal contempt. Reading the language cited by defendant in the context of the entire hearing, it is clear that the trial court properly required proof beyond a reasonable doubt of defendant's contempt of court. Additionally, the trial court's order clearly states that the facts were found "beyond a reasonable doubt" which is the proper standard. This assignment of error is overruled.

For the reasons discussed above, we conclude that the trial court did not err and that its order should be

Affirmed.

Judges McGEE and STEPHENS concur.