STATE OF NORTH CAROLINA, Plaintiff v. BILLIE JO COLEMAN, Defendant

No. COA07-15

(Filed 15 January 2008)

**1. Appeal and Error— Rule 2—confusion in case numbers and captions—notice of appeal sufficient—defendant not at fault**

An appeal in a criminal contempt matter was heard to prevent manifest injustice where it arose from a civil case and there was confusion in the case numbers and captions, but the notice of appeal was sufficient to give notice of what was being appealed and the confusion was not caused by defendant.

**2. Contempt— criminal—findings—events after show cause order**

Findings of fact in a criminal contempt matter based solely on acts which occurred after the issuance of the show cause order were not sufficient. The trial court must make findings of fact beyond a reasonable doubt as to whether defendant committed the acts alleged in each show cause motion; although the record here contained evidence that defendant committed the acts alleged, the appellate court is not at liberty to make findings for the trial court.

Appeal by defendant from orders entered 25 May 2006 and 31 May 2006 by Judge Vance Bradford Long in Guilford County Superior Court. Heard in the Court of Appeals 10 September 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General M. Lynne Weaver, for the State.*

*Robert W. Ewing, for defendant-appellant.*

STROUD, Judge.

Defendant Billie Jo Coleman appeals from orders entered 26 May 2006 and 31 May 2006 finding her in indirect criminal contempt.[1] Defendant contends that the trial court erred because it found no facts to support a conclusion that she should be found in contempt of court. We agree. For the reasons which follow, we conclude that the

[1] 1. We note that this case arose in the course of a civil action, Guilford County No. 06 CVS 3527, but upon the filing of each contempt motion by the plaintiff in the civil action, the trial court established separate criminal file numbers for the two contempt actions. Defendant captioned her notice of appeal with only the civil case number, then mentioned only the criminal contempt orders in the notice of appeal. N.C.R. App. P. 3(d). We also note that the trial courts executed and entered an order bearing the civil case caption and file number on 31 May 2006, which contains findings of fact, conclusions of law, and decretal provisions. The trial court also executed two orders on the date of the hearing, 22 May 2006, both entered on 25 May 2006, each with the criminal caption and file number, which contain no findings of fact or conclusions of law but only order that the defendant was found in indirect criminal contempt and state the sentence imposed. In fact, the sentences imposed in the two previously executed orders in the criminal file numbers differ from the sentence imposed in the 31 May 2006 order in the civil file number, apparently upon defendant's request.

However, because defendant's notice of appeal was sufficiently clear to give notice to the State and to this Court exactly what was being appealed, and because any confusion as to the file numbers and captions upon the various orders was not created by defendant, we use our discretionary power under N.C.R. App. P. 2 to review this case on its merits in order to prevent manifest injustice to defendant.

trial court erred when it entered its orders finding defendant in indirect criminal contempt and therefore vacate those orders.

## I. Background

In or about 2003, defendant had a romantic relationship with an employee of Asbury Automotive North Carolina, L.L.C, an automobile retailer operating dealerships under the name of Crown ("Asbury" or "Crown"). After the romantic relationship ended, defendant began to make numerous unwanted phone calls to the employees and officers of plaintiff. Plaintiff filed a verified complaint against defendant on 7 February 2006. The complaint alleged that defendant's phone calls were disruptive, interfered with plaintiff's business, and caused plaintiff's employees to fear for their safety. The complaint sought injunctive relief and damages for trespass to chattels. Also on 7 February 2006, plaintiff moved for a temporary restraining order (TRO) to forbid defendant from having any contact with, *inter alia*, plaintiff's employees. The trial court entered a TRO on 7 February 2006, enjoining plaintiff from:

a. having any contact whatsoever with any employee of Plaintiff, which includes all employees of automobile dealerships operating under the "Crown" name, including but not limited to contact by telephone, cellular telephone, facsimile transmittal, email, voice mail, or regular mail;

b. having any contact whatsoever with any customer, manufacturer, or other business associate of Plaintiff concerning Defendant's relationship with and opinion of Matthew Perry, including by [sic] not limited to contact by telephone, cellular telephone, facsimile transmittal, email, voice mail, or regular mail[.]

On 15 February 2006, plaintiff moved for a show cause order, attaching transcriptions of defendant's voice messages to plaintiff's employees left on 12 February 2006 (three messages) and 13 February 2006. The motion prayed that defendant be held in criminal contempt for willful refusal to comply with the TRO.

The trial court commenced a hearing on the show cause motion straightaway. The trial court entered a show cause order[2] during the hearing, but delayed ruling on criminal contempt, extending the TRO by order entered 24 February 2006, and continuing the show cause

---

2. Defendant was ordered to "show cause why she should not be held in criminal contempt of this Court for her failure to comply with the requirements of the Order granting Temporary Restraining Order date February 7, 2006."

hearing by a second order entered on 24 February 2006 to give defendant an opportunity to find legal counsel for the underlying civil lawsuit. In the continuance order, the trial court also found defendant indigent and appointed counsel for the purpose of her defense in the show cause hearing.

On 14 March 2006, plaintiff moved for a second show cause order, alleging that plaintiff's employees had received "literally hundreds" of hang-up calls and text messages very similar in content to the voice messages attached to the first show cause motion. The trial court again commenced a hearing on the show cause motion straightaway. The trial court entered a show cause order immediately following the hearing, with the same operative language as the 15 February 2006 show cause order. Proceedings were then delayed pending a psychiatric evaluation of defendant, in which she was found competent to stand trial.

On 22 May 2006, a hearing on the two show cause orders was held in Guilford County Superior Court before Judge Vance Bradford Long. Plaintiff presented evidence in the form of audio recordings, transcripts of cell phone text messages and witness testimony to show contact initiated by defendant. Defendant, represented by counsel, relied on a defense of irresistible impulse, a defense which she conceded has not previously been recognized in North Carolina.

At the close of the hearing, the trial court executed an order in each criminal file, but these orders contained no findings of fact or conclusions of law. The order in File No. 06 CRS 24257, regarding the show cause order issued on 7 [sic] February 2006, stated that "**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED** that the defendant is found in **IN-DIRECT CRIMINAL CONTEMPT** and shall serve **30 days** in the Guilford County Jail with credit for 32 days." (Emphasis in original.) The order in File No. 06 CRS 24258, regarding the show cause order issued on 15 [sic] March 2006, stated that "**IT IS THEREFORE, ORDERED, ADJUDGED AND DE-CREED** that the defendant is found in **IN-DIRECT CRIMINAL CONTEMPT** and shall serve **30 days at the expiration of 06CRS 24257** in the Guilford County Jail. No credit shall be assessed." (Emphasis in original.)

In an order entered 31 May 2006, with the civil case caption and file number, the trial court made findings of fact beyond a reasonable doubt, including:

9. . . . that *subsequent* to the issuance and service of the February 15, 2006 show-cause order, the Defendant did telephone Mr. Michael Kearney, President of Asbury Automotive North Carolina, leaving a lengthy message on Mr. Kearney's voice mail concerning Mr. Matthew Perry, an employee of Asbury Automotive.

. . . .

12. That *subsequent* to the issuance of the March 14th show-cause order, the Defendant telephoned the Charlottesville, Virginia, BMW dealership owned by Asbury Automotive, where Mr. Perry is now employed and spoke with a lot attendant who was answering the telephone on this occasion. The Defendant informed the lot attendant that if he did not change his attitude, she would come to Virginia or that she could have his legs broken.

(Emphasis added.)

On the basis of these findings, the trial court found that defendant had violated the TRO and accordingly found defendant in indirect criminal contempt. Defendant appeals.

## II. Standard of Review

In contempt proceedings, the trial judge must make findings of fact beyond a reasonable doubt, and enter a written order. N.C. Gen. Stat. § 5A-15(f) (2005). On appellate review of a contempt order, "the trial judge's findings of fact are conclusive . . . when supported by any competent evidence and are reviewable only for the purpose of passing on their sufficiency." *O'Briant v. O'Briant*, 313 N.C. 432, 436-37, 329 S.E.2d 370, 374 (1985).

## III. Analysis

[2] On appeal, defendant contends that the contempt orders should be vacated because she did not receive sufficient notice of the allegedly contemptuous actions. She argues, in effect, that evidence of acts which occurred after the show cause order are not competent as a matter of law, and that since the trial court's findings of fact are based only on actions which occurred after each show cause order, those findings should be set aside. She further contends that because there were no findings other than findings based on evidence of acts occurring after the issuance of each show cause order, the trial court's findings of fact do not support its conclusion that

she violated orders of the court and thereby should be found in criminal contempt.

The State responds that defendant received sufficient notice to be heard and defend against the charges. The State also argues that the record contains sufficient evidence to support the trial court's conclusion that defendant violated the terms of the TRO, on the grounds that evidence of events which occur after a show cause order is sufficient to support an adjudication of criminal contempt.

"[C]riminal contempts are crimes, and accordingly, the accused is entitled to the benefits of all constitutional safeguards." *O'Briant*, 313 N.C. at 435, 329 S.E.2d at 373 (vacating a contempt judgment for insufficient notice when the show cause order was not clear about the acts which were deemed contemptuous). Notice and a hearing at which the State bears the burden of proving the alleged criminal acts beyond a reasonable doubt is the bedrock of constitutional due process. *Id.*; *In re B.E.*, 186 N.C. App. ——, ——, 652 S.E.2d 344, —— (2007); *State v. Simon*, 185 N.C. App. 247, 255, 648 S.E.2d 853, 858 (2007). For notice to be constitutionally sufficient, it must afford the defendant the opportunity to prepare an adequate defense. *O'Briant*, 313 N.C. at 435, 329 S.E.2d at 373; *State v. Glynn*, 178 N.C. App. 689, 694-95, 632 S.E.2d 551, 555, *disc. review denied and appeal dismissed*, 360 N.C. 651, 637 S.E.2d 180 (2006). For indirect criminal contempt[3] proceedings in which a trial court is not allowed to proceed summarily, a show cause order is analogous to a criminal indictment and is the means by which the defendant is afforded the constitutional safeguard of notice. N.C. Gen. Stat. § 5A-15(a) (2005); *O'Briant*, 313 N.C. at 439-40, 329 S.E.2d at 375-76.

We note first that a 'show cause order,' in a criminal contempt proceeding is something of a misnomer. A show cause order in a *civil* contempt proceeding which is based on a sworn affidavit and a finding of probable cause by a judicial official *shifts the burden of proof*

---

3. Direct criminal contempt:

(1) Is committed within the sight or hearing of a presiding judicial official; and

(2) Is committed in, or in immediate proximity to, the room where proceedings are being held before the court; and

(3) Is likely to interrupt or interfere with matters then before the court.

. . . .

Any criminal contempt other than direct criminal contempt is indirect criminal contempt . . . .

N.C. Gen. Stat. § 5A-13 (2005).

to the defendant to show why he should not be held in contempt. N.C. Gen. Stat. § 5A-23(a) (2005); *Shumaker v. Shumaker*, 137 N.C. App. 72, 76, 527 S.E.2d 55, 57 (2000); *but see* N.C. Gen. Stat. § 5A-23(a1) (placing the burden of proof on the movant in motions for contempt filed pursuant to N.C. Gen. Stat. § 5A-23(a1)); *State v. Salter*, 29 N.C. App. 372, 374, 224 S.E.2d 247, 249 (1976) ("In hearings to show cause why an injunction ought not to be continued pending final hearing on the merits, the burden of proof is on the [plaintiff], even though traditionally the notice order directs the defendant to show cause why the injunction should not be continued."). To the contrary, a show cause order in a criminal contempt proceeding is akin to an indictment, and the burden of proof beyond a reasonable doubt that the alleged contemptuous acts occurred must be borne by the State. *Simon*, 185 N.C. App. at 255, 648 S.E.2d at 858.

In correlating the notice requirement with the burden of proof, we agree that "[i]t is an elementary proposition of law, both sound and humane, that a person may not be convicted of the crime charged upon a certain date by showing that upon other dates, previous or subsequent, he committed *other crimes* and offenses." *State v. Reineke*, 106 N.E. 52 (Ohio 1914) (emphasis added) (noting that this rule does not exclude evidence of subsequent bad acts for the purpose of showing intent or a common plan); *compare State v. Price*, 310 N.C. 596, 599, 313 S.E.2d 556, 559 (1984) ("The State may prove that an offense charged was committed on some date other than the time named in the bill of indictment. . . . A variance as to time, however, becomes material and of the essence when it deprives a defendant of an opportunity to adequately present his defense."). While this proposition is apparently so elementary that we found no cases in support of it in North Carolina, we conclude that it is implicit in our cases requiring notice, hearing, and proof beyond a reasonable doubt as constitutional safeguards. *See, e.g., O'Briant*, 313 N.C. at 435, 329 S.E.2d at 373; *In re B.E.*, 186 N.C. App. ——, ——, 652 S.E.2d 344, —— (2007); *State v. Simon*, 185 N.C. App. 247, 255, 648 S.E.2d 853, 858 (2007).

In its order entered 31 May 2006, the trial court found the following beyond a reasonable doubt:

9. . . . that *subsequent* to the issuance and service of the February 15, 2006 show-cause order, the Defendant did telephone Mr. Michael Kearney, President of Asbury Automotive North Carolina, leaving a lengthy message on Mr. Kearney's voice mail

concerning Mr. Matthew Perry, an employee of Asbury Automotive.

. . . .

12. That *subsequent* to the issuance of the March 14th show-cause order, the Defendant telephoned the Charlottesville, Virginia, BMW dealership owned by Asbury Automotive, where Mr. Perry is now employed and spoke with a lot attendant who was answering the telephone on this occasion. The Defendant informed the lot attendant that if he did not change his attitude, she would come to Virginia or that she could have his legs broken.

(Emphasis added.)

The trial court made no other findings of acts which it deemed contemptuous, and adjudged defendant to be in indirect criminal contempt based on these acts alone. The trial court made no findings regarding the acts alleged in the motions for contempt which led to the issuance of each show cause orders but *only* regarding events which occurred after the issuance of the show cause order.

### IV. Conclusion

A defendant's constitutional right to notice and a hearing at which the State bears the burden of proving the alleged contemptuous acts beyond a reasonable doubt[4] compels us to hold that findings of fact based solely on acts which occurred after the issuance of the show cause order are insufficient to adjudge the defendant in criminal contempt. Although we recognize that the record in the case *sub judice* is replete with evidence that the defendant did commit the acts as alleged in each show cause motion, the trial court must make the findings of fact beyond a reasonable doubt as to whether the defendant committed these acts. N.C. Gen. Stat. § 5A-15. The findings of fact were not challenged on appeal, and we are not at liberty to make findings of fact for the trial court, *In re Estate of Lunsford,* 160 N.C. App. 125, 132, 585 S.E.2d 245, 250 (2003) ("It is not the role of this Court to consider what the trial court could have found or to make our own findings based on our review of the record."), *rvs'd on other grounds,* 359 N.C. 382, 610 S.E.2d 366 (2005), and we find no precedent or legal authority permitting us to remand for additional findings of fact by

---

4. We note that our holding does not, as the State contends, bar a party "from putting on *any* evidence of contempt that occurred after the issuance of a show cause order." (Emphasis added.)

the trial court in an indirect criminal contempt matter. "Instead, our review is limited to determining whether the court's actual findings of fact support the conclusion that it reached." 160 N.C. App. at 132, 585 S.E.2d at 250.

We therefore must conclude that the trial court erred when it entered its orders finding defendant in indirect criminal contempt based solely upon acts which occurred after the issuance of the show cause orders. Accordingly, we vacate the criminal contempt orders entered by the trial court.

VACATED.

Chief Judge MARTIN and Judge ARROWOOD concur.