ONSLOW COUNTY o/b/o CAROL D. EGGLESTON, Plaintiff
v.
NATHANIEL J. WILLINGHAM, Defendant
No. COA08-1120.
Court of Appeals of North Carolina.
Filed September 15, 2009.
This case not for publication
No brief for plaintiff-appellee.
Mary McCullers Reece for defendant-appellant.
ROBERT C. HUNTER, Judge.
Nathaniel J. Willingham (defendant) appeals from an order entered 9 April 2008, which, inter alia, denied defendant's motion to decrease child support and found him in civil contempt. After careful review, we affirm.

I. Background
Defendant has one minor child (the child) with Carol D. Eggleston (plaintiff). On 11 December 1998, an order was entered, which, inter alia, required defendant to pay $273.00 per month for the support and maintenance of the child, retroactive to September 1998. At that time, defendant was a practicing attorney with a gross monthly income of $2,528.00. In calculating defendant's child support obligation, the trial court subtracted $401.00 from defendant's gross monthly income, due to defendant's responsibility for three additional children, and deviated downward from a $443.00 per month obligation upon defendant's request for consideration of travel expenses associated with visiting the child he fathered with plaintiff. This order has not been modified since its entry.
On 6 January 2005, an order was entered, which determined that defendant was $546.00 in arrears on his child support obligation, found him in contempt, and mandated that he pay $546.00 as a purge payment. On 18 August 2005, defendant filed, in Onslow County District Court, a motion to modify his child support obligation and to transfer the case to Maryland. In this motion, defendant stated that both he and plaintiff were currently residents of Maryland, that he had been unemployed since November 2004, that he was actively seeking employment, and that he could not afford to pay the $273.00 monthly child support payment. Defendant never scheduled this motion for hearing.
On 13 September 2007, plaintiff filed a verified "Motion for Order to Show Cause" alleging that defendant had willfully failed to pay child support as mandated by court order. On 10 October 2007, an "Order to Appear and Show Cause for Failure to Comply [with] Support Order and Order to Produce Records" was entered against defendant.
On or about 1 November 2007, defendant filed an affidavit of indigency and requested court appointed counsel. On 1 November 2007, an order was entered assigning defendant a court appointed attorney. On 17 December 2007, plaintiff filed a "Notice of Intent to Require Income Withholding for Payment of Child Support" with regard to the $600.00 monthly income defendant was receiving from the City of Jacksonville. On 18 January 2008, defendant filed an objection to the implementation of income withholding.
On 28 March 2008, a hearing was held regarding the motion and order to show cause and defendant's objection to implementation of income withholding. At the beginning of this hearing, defense counsel brought up defendant's 2005 motion to modify, and the trial court decided to address that motion as well. Defendant testified that he was disbarred from practicing law in North Carolina in the fall of 2004, that he subsequently moved to Maryland to find work, but that he was unable to secure employment due, in part, to the North Carolina State Bar "persuad[ing] the SBI to . . . charge [him] criminally." Around September 2005, defendant moved to California, where he worked at Macy's Department Store selling shoes during the Christmas season. During the last quarter of 2005, defendant's total income was at least $14,396.88; however, he paid no child support during that time. In addition, defendant worked as an office manager for MCC Flooring Contractors from "the last of December 2005 until May 24, 2006." Defendant then applied for unemployment benefits with the State of California. Defendant testified that he began receiving unemployment benefits in September 2006, in an amount of about $373.00 per week on average. Defendant indicated that he earned approximately $23,178.16 in total income during 2006 and that he only paid $200.00 in child support.
Around December 2006, defendant moved back to North Carolina and began taking courses towards obtaining a general contractor's license at Coastal Community College in Jacksonville, North Carolina and continued to collect unemployment benefits from the State of California until November 2007. In 2007, defendant received approximately $14,716.00 in unemployment from the State of California and made one child support payment in the amount of $1,000.00. In December 2007, defendant was elected to the Jacksonville City Council and began receiving a $600.00 gross monthly salary from the City of Jacksonville. Defendant testified that between his studies and his city council obligations, he did not have time to engage in additional employment. Defendant further stated that at the time of the hearing, he was supporting himself with the $600.00 he received from the City of Jacksonville and with loans from friends. Defendant argued that he had suffered an involuntary and substantial decrease in income, which justified a decrease in his child support obligation.
On 9 April 2008, the trial court entered an order, which, inter alia, denied defendant's motion to modify, found him to be in civil contempt, determined that he was $9,447.00 in arrears, and set the purge payment at $4,723.50. On 16 April 2008, the trial court entered an order, which, inter alia, granted defendant's motion for a stay pending appeal and stayed defendant's obligation to pay child support, both current and arrears, pending the outcome of the appeal. This appeal followed.
Additional facts necessary to an understanding of the issues are set out in the opinion below.

II. Analysis
On appeal, defendant argues that the trial court erred by denying his motion to modify and in finding him to be in civil contempt. As discussed infra, we disagree.

A. Motion to Modify
In reviewing child support orders, our review is limited to a determination [of] whether the trial court abused its discretion. Under this standard of review, the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision. The trial court must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law.
Spicer v. Spicer, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005).
Here, defendant asserts that the trial court erred in denying his motion to modify because his evidence showed that he had suffered a substantial and involuntary decrease in income and that he was entitled to the three year/15% presumption contained in the North Carolina Child Support Guidelines, 2009 Ann. R. N.C. 41, 46 (Rev. Oct. 2006) (the Guidelines). Though it is undisputed that defendant did not present any evidence as to, inter alia, the needs of the child or as to plaintiff's income and expenses, defendant asserts that he was not required to present this evidence because his evidence as to his income conclusively demonstrated that he was only earning $600.00 per month, placing him within the "Self-Support Reserve" for "Supporting Parents with Low Incomes" (the Self-Support Reserve) and the shaded area of the "Proposed Schedule of Basic Child Support Obligations" (the Schedule), which are contained in the Guidelines. Id. at 42, 47. Furthermore, even though the trial court's determination as to defendant's "income" placed him outside of the Self-Support Reserve and the shaded area of the Schedule, defendant contends that the trial court erred by determining that, pursuant to the Guidelines, defendant's "income" was "presently no less than $3500.00 per month, which [was] substantially more income than was used to calculate the 1998 Support Order." As discussed infra, we find defendant's argument to be without merit.
"[A]n order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party . . .." N.C. Gen. Stat. § 50-13.7(a) (2007). "[M]odification of a child support order involves a two-step process. The court must first determine a substantial change of circumstances has taken place; only then does it proceed to apply the Guidelines to calculate the applicable amount of support." McGee v. McGee, 118 N.C. App. 19, 26-27, 453 S.E.2d 531, 536, disc. review denied, 340 N.C. 359, 458 S.E.2d 189 (1995).
A change in circumstances may be shown in any of several ways: a substantial increase or decrease in the child's needs; a substantial and involuntary decrease in the income of the non-custodial parent even though the child's needs are unchanged; a voluntary decrease in income of either supporting parent, absent bad faith, upon a showing of changed circumstances relating to child oriented expenses; and, for support orders that are at least three years old, proof of a disparity of fifteen (15) percent or more between the amount of support payable under the original order and the amount owed under North Carolina's Child Support Guidelines based upon the parties' current income and expenses.
Wiggs v. Wiggs, 128 N.C. App. 512, 515, 495 S.E.2d 401, 403 (1998) (citations omitted), disapproved of on other grounds, Pulliam v. Smith, 348 N.C. 616, 501 S.E.2d 898 (1998).
In a proceeding to modify the amount of child support payable under a child support order that was entered at least three years before the pending motion to modify was filed, a difference of 15% or more between the amount of child support payable under the existing order and the amount of child support resulting from application of the guidelines based on the parents' current incomes and circumstances shall be presumed to constitute a substantial change of circumstances warranting modification of the existing child support order.
Guidelines, 2009 Ann. R. N.C. 46. The party seeking to modify the order has the burden of showing that a substantial change of circumstances has occurred. See, e.g., Wolf v. Wolf, 151 N.C. App. 523, 526, 566 S.E.2d 516, 518 (2002).
Where an obligor-parent's "adjusted gross income" falls within the Self-Support Reserve and within the shaded area of the Schedule, and Worksheet A is used to calculate the child support obligation, the Guidelines provide that "the basic child support obligation and the obligor's total child support obligation are computed using only the obligor's income." Guidelines, 2009 Ann. R. N.C. 42. Where, as here, the child support obligation involves only one child, in order to fall within the shaded area of the Schedule, an obligor's gross monthly income cannot exceed $1,300.00. See id. at 47. The Guidelines define "`income'" as:
a parent's actual gross income from any source, including but not limited to income from employment or self-employment (salaries, wages, commissions, bonuses, dividends, severance pay, etc.), ownership or operation of a business, partnership, or corporation, rental of property, retirement or pensions, interest, trusts, annuities, capital gains, social security benefits, workers compensation benefits, unemployment insurance benefits, disability pay and insurance benefits, gifts, prizes and alimony or maintenance received from persons other than the parties to the instant action. When income is received on an irregular, non-recurring, or one-time basis, the court may average or pro-rate the income over a specified period of time or require an obligor to pay as child support a percentage of his or her non-recurring income that is equivalent to the percentage of his or her recurring income paid for child support.
Id. at 43 (emphasis added).
In the instant case, the trial court found in pertinent part:
18. That the Defendant, through his attorney, was served with a Subpoena on March 13, 2008 commanding him to produce, among other things, bank statements for December 2007, [and] January and February of 2008. That the Defendant did produce a Bank of America Bank Statement and a Wachovia Bank Statement. That the statements show that from December 14, 2007 through February 28, 2008 total deposits of $8826.52, even though the Defendant testified that his only income was $600.00 per month as a councilman for the City of Jacksonville and that "a friend" made deposits of approximately $800.00 per month into one of these accounts as a loan to the Defendant. That this "friend," through Defendant's testimony, consistently and on a recurring basis, provides monies to the Defendant from which the Defendant pays his monthly bills and expenses and from which the Defendant could pay child support under this Order should he ever choose to do so. That the Defendant failed to produce any documents or other evidence that the monies being provided were in the form of a loan. That the Defendant failed to produce documents or other evidence that he had repaid his "friend" at any time any amount against a loan. That the Court finds these consistent and recurring deposits and monies constitute income as that term is used and defined in the North Carolina Child Support Guidelines and the Court finds that the Defendant's income is presently no less than $3500.00 per month, which is substantially more income than was used to calculate the 1998 Support Order.
25. That the North Carolina Child Support guidelines, which apply as rebuttal presumptions in all legal proceedings involving a party's child support obligation, require[] a determination of both parties['] monthly gross income, number of children, pre-existing child support payments, other parents['] income if either party has other biological children in their home, number of other children, work-related child care expenses, health insurance premium costs and extraordinary expenses, if any.
26. That the Defendant failed to produce any evidence of the custodial parent, Carol Eggleston's income, failed to produce any evidence of the existence or non-existence of pre-existing child support payments, failed to produce any evidence of other biological children in either part[y's] home, failed to produce the number of other biological children, if any, in either part[y's] home, failed to produce the work-related child care expense[s], if any, of the minor child, failed to produce the health insurance premium costs of the minor child or who was paying [the] same, and failed to produce the extraordinary expenses of the minor child, if any, and who was paying [the] same.
Based on these findings the trial court concluded:
5. That the North Carolina Child Support guidelines . . . require[] a determination of both parties['] monthly gross income, number of children, pre-existing child support payments, other parents['] income if either party has other biological children in their home, number of other children, work-related child care and expenses, health insurance premium costs and extraordinary expenses, if any.
6. That the Defendant failed to produce any evidence of the custodial parent, Carol Eggleston's, income, failed to produce any evidence of the existence or non-existence of pre-existing child support payments, failed to produce any evidence of other biological children in either part[y's] home, failed to produce the number of other biological children, if any, in either part[y's] home, failed to produce the work-related child care expense, if any, of the minor child, failed to produce the health insurance premium costs of the minor child or who was paying [the] same, and failed to produce the extraordinary expenses of the minor child, if any, and who was paying the same. That the Defendant has failed to present evidence that a material and substantial change[] of circumstance has occurred justifying a modification of the Defendant's November 16, 1998 child support order.

(Emphasis added).
At the 28 March 2008 hearing, defendant produced account summaries for two bank accounts: (1) an individual Bank of America account; and (2) a joint Wachovia account, which defendant had with a "friend[,]" Gillian Beaumont (Ms. Beaumont). Here, the trial court did utilize the total deposits that were made into these two accounts to arrive at its determination regarding defendant's "income" as defined in the Guidelines. However, contrary to defendant's assertion in his brief, defendant did not testify that the deposits that were made into both accounts, that were in excess of his paycheck, were made by Ms. Beaumont. In fact, he did provide a source for the deposits that were made into his individual Bank of America account. Furthermore, defendant testified that Ms. Beaumont contributed about $800.00 per month into the joint Wachovia account and that she had been giving him this financial assistance in the form of a loan for about three months. However, the record shows that substantially more money was deposited into the Wachovia account.
Here, as the party moving for the modification, defendant bore the burden of establishing a substantial change of circumstances, which warranted modification, Wolf, 151 N.C. App. at 526, 566 S.E.2d at 518, and the trial court was not bound to accept his assertion that any of the recurring, financial assistance provided to him was in the form of loans. In fact, it is explicit in the trial court's findings and conclusions cited above that the trial court did not believe that defendant had produced sufficient evidence to establish that these deposits were loans, and it is implicit in said findings and conclusions that the court did not find defendant's assertion that said deposits were loans to be credible.
While defendant asserts that this Court's decision in Sloan v. Sloan, 87 N.C. App. 392, 360 S.E.2d 816 (1987) conclusively establishes that the trial court erred in determining that these deposits were "income" to him, we disagree. In Sloan, the defendant appealed from a judgment setting the initial award of child support. Id. at 393, 360 S.E.2d at 818. In that case, the defendant asserted that the trial court erred by "including in defendants income" a $15,000.00 payment that the defendant was given by his parents, which the trial court "termed a `gift[.]'" Id. at 395, 360 S.E.2d at 819. This Court agreed and stated:
The $15,000.00 is evidenced by a promissory note dated 20 February 1985. The mere fact that the transaction is in the form of a non-interest bearing demand note from [the] defendant's parents and the fact that no demand has been made, does not render it a gift. Since the record is absent of any evidence of intent of [the] defendant's parents to relinquish or abandon their claim on the amount of the note, the court's finding that the transaction was a gift is erroneous. Even assuming arguendo that the $15,000.00 was a gift to [the] defendant, it would still be error to include such a gift as income for purposes of calculating child support since there is no evidence that such generosity on the part of [the] defendant's parents will be reoccurring.
Id.
Here, unlike in Sloan, defendant is appealing from an order denying his motion to modify, and as noted supra, defendant bore the burden of showing that a substantial change of circumstances had occurred. Furthermore, in Sloan, all of the evidence showed that the $15,000.00 payment was a one-time occurrence, and the defendant produced a note. Here, defendant's testimony established that the deposits had been reoccurring, and, other than his mere assertion, defendant did not produce any documentation or other evidence to show that these deposits were loans. In addition, in Sloan, the defendant's parents gave him the money in February 1985, and the judgment awarding child support was not entered until 29 October 1986. In other words, at the time the judgment was entered in Sloan, approximately 18 months had passed since the defendant had received the money from his parents. In contrast, here, the deposits occurred continuously over a period of 2-3 months, which immediately preceded the hearing and the entry of the order. Finally, we note that Sloan was decided prior to the enactment of the Guidelines.
Lastly, defendant asserts that even if the trial court did not find it credible that the deposits were loans, the deposits could still not be counted as "income" pursuant to the Guidelines. We disagree. In accordance with the Guidelines, these deposits could be classified as "gifts" or "maintenance received from persons other than the parties to the instant action." See Guidelines, 2009 Ann. R. N.C. 43; see also Spicer, 168 N.C. App. at 288, 607 S.E.2d at 682 ("The Guidelines include as income any maintenance received from persons other than the parties to the instant action. Maintenance is defined as [f]inancial support given by one person to another . . . ." (internal citations and quotation marks omitted)).
In sum, we conclude that the trial court did not abuse its discretion in determining that deposits made into the Bank of America account and the Wachovia account were includable as income and that defendant did not produce sufficient evidence to show that a material and substantial change of circumstance, which warranted a modification of the original child support order, had occurred here.

B. Civil Contempt
Next, defendant asserts that the trial court erred by ordering him to be held in civil contempt and in determining that he had the present ability to purge himself of the contempt by paying $4,723.50 towards his $9,447.00 in total arrears and by paying an additional $27.00 per month towards the remainder of his arrears. We disagree.
"Review in [civil] contempt proceedings is limited to whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law." Adkins v. Adkins, 82 N.C. App. 289, 292, 346 S.E.2d 220, 222 (1986). "Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment." Hartsell v. Hartsell, 99 N.C. App. 380, 385, 393 S.E.2d 570, 573 (1990), aff'd per curiam, 328 N.C. 729, 403 S.E.2d 307 (1991). "Findings of fact to which no error is assigned `are presumed to be supported by competent evidence and are binding on appeal.'" Pascoe v. Pascoe, 183 N.C. App. 648, 650, 645 S.E.2d 156, 157 (2007) (quoting In re A.S. & M.J.W., 181 N.C. App. 706, 709, 640 S.E.2d 817, 819 (2007)). "`The trial court's conclusions of law drawn from the findings of fact are reviewable de novo.'" State v. Simon, 185 N.C. App. 247, 250, 648 S.E.2d 853, 855 (quoting Curran v. Barefoot, 183 N.C. App. 331, 335, 645 S.E.2d 187, 190 (2007)), disc. review denied, 361 N.C. 702, 653 S.E.2d 158 (2007). "A show cause order in a civil contempt proceeding which is based on a sworn affidavit and a finding of probable cause by a judicial official shifts the burden of proof to the defendant to show why he should not be held in contempt." State v. Coleman, 188 N.C. App. 144, 149-50, 655 S.E.2d 450, 453 (2008).
General Statute 5A-21 provides that a person may not be imprisoned for civil contempt unless [t]he person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable him to comply with the order. General Statute 5A-22 provides that the order of a court holding a person in contempt must specify how the person may purge himself of the contempt. Because these statutes relate to the same subject matter, they must be construed in pari materia. When so construed, these statutes require that a person have the present ability to comply with the conditions for purging the contempt before that person may be imprisoned for civil contempt.
. . . .
To justify conditioning defendant's release from jail for civil contempt upon payment of a large lump sum of arrearages, the district court must find as fact that defendant has the present ability to pay those arrearages.
McMiller v. McMiller, 77 N.C. App. 808, 809, 336 S.E.2d 134, 135 (1985) (internal citations and quotation marks omitted). A court may hold a defendant in civil contempt if it "find[s] facts that [the] defendant had the present ability to pay the arrearage . . . by either making immediate payment or by taking reasonable measures, such as borrowing the money, selling [the] defendant's .. . property[,] . . . or liquidating other assets, in order to pay the arrearage." Teachey v. Teachey, 46 N.C. App. 332, 335, 264 S.E.2d 786, 787-88 (1980).
Here, the trial court made numerous, unchallenged and binding findings of fact regarding several assets defendant had available to him at the time of the hearing as well as several discretionary expenditures that defendant had recently made:
13. That the Defendant has titled in his name a 2001 Mercedes MI 430 SUV under a Maryland Certificate of Title and pays insurance on said vehicle at the rate of $57.72 per month.
14. That the Defendant controls a vehicle title in Buffalo Soldier, LLC, a corporation totally funded by the Defendant, a 1998 Mercedes E320 4D, and the Defendant pays insurance on said vehicle at the rate of $60.38 per month.
15. That the Defendant has titled in his name a 2001 Volkswag[e]n Cabrio GLS under a Maryland Title, and the Defendant pays insurance on said vehicle at the rate of $53.51 per month.
16. That the Defendant is co-owner of a 1992 Mazda Miata, titled in the District of Columbia, and the Defendant pays insurance on said vehicle at a rate of $50.24.
17. That all of the above-referenced vehicles are insured by the Defendant with Progressive Direct, Policy Number XXXXXXXX-X and an installment payment was made on this policy from Defendant's Wachovia Bank Account on February 11, 2008 in the amount of $441.84.
. . . .
19. That through [his] bank statements . . . the Defendant spent the following amounts:
A. Wachovia 2-25-2008 $220.50 airline tickets to California
B. Wachovia 2-28-2008 $92.58 Hotel.com
C. Wachovia 2-29-2008 $258.72 Hotel.com
D. Wachovia (Travelo[c]ity) 2-25-2008 $6.00 Travelocity
E. Wachovia (Red Lobster) 2-19-2008 $30.59 food
F. Wachovia (Riverview) 2-19-2008 $29.68 food
G. Wachovia (Proflowers) 2-14-2008 $76.90 friend
H. Wachovia (Gold's Gym) 2-4-2008 $55.07 gym fees
I. Wachovia (Gold's Gym) 2-15-2008 $20.07 gym fees
J. Bank of America (Gold's Gym) 12-17-2008 $20.07 gym fees
K. Bank of America (E Harmony) 2-1-2008 $59.85 dating service
20. That from December 2007 through the beginning of March 2008, (the period of time from which the Defendant produced bank records) the Defendant made the above-referenced discretionary expenditures and paid no child support pursuant to the Court Order even though, during this period of time, the Defendant['s] bank records show deposits in the amount of $8826.52.
21. That the Defendant lists on his Affidavit of Indigency filed November 1, 2007 installment payment[s] on a vehicle of $250.00/month even though he admitted in Court that he was not paying any monthly amount towards a vehicle payment.
22. The Defendant owns real estate, according to his Affidavit of Indigency though he lists no value for said real estate.
23. The Defendant, in addition to the money he has available on a consistent basis from "a friend", is employed as an elected councilman with the City of Jacksonville with an income of $600.00 per month.
24. The defendant is enrolled in classes at Coastal Carolina Community College taking contractor courses.
. . . .
27. That during the month of March, 2008 the Defendant did visit the minor child in Maryland and took the child out for dinner and shopping, purchasing the child a musical keyboard and expending over $375.00. That during the month of March, 2008 the Defendant paid no child support pursuant to the Court Order.
In addition, the trial court entered the following finding, which defendant challenges on appeal:
28. That the consistent and recurring deposits and monies from "a friend," the present income of the Defendant from the City of Jacksonville, and the income reflected herein from Defendant's previous employment and Unemployment Benefits from the State of California, and other facts enumerated herein, provide a sufficient basis from which the Defendant could have paid support pursuant to the Court Order and from which the Defendant has the present ability to comply with the Order or to take reasonable measures to comply with the Order. The Defendant's failure to comply with the Order of this Court is willful, deliberate, and without just cause in disregard of his parental and legal obligations to support his child despite his present ability to comply or to take reasonable measures to comply with the Order.
Based on these findings, the trial court made the following conclusions of law, also challenged by defendant on appeal:
7. That the consistent and recurring deposits and monies from "a friend," the present income of the Defendant from the City of Jacksonville, and the income reflected herein from Defendant's previous employment and Unemployment Benefits from the State of California, and other facts enumerated herein, provide a sufficient basis from which the Defendant could have paid support pursuant to the Court Order and from which the Defendant has the present ability to comply with the Order or to take reasonable measures to comply with the Order. The Defendant's failure to comply with the Order of this Court is willful, deliberate, and without just cause in disregard of his parental and legal obligations to support his child despite his present ability to comply or to take reasonable measures to comply with the Order.
8. That the Defendant is in Civil Contempt of the Court's Order based upon the Defendant's willful and continuing failure to comply with the terms of the $273.00 per month child support order, despite Defendant's present ability to comply with the Order or to take reasonable measures to comply with the Order. The Defendant's arrears, as of March 31, 2008 are $9447.00.
Based on these findings and conclusions, the trial court ordered, adjudged and decreed:
That the Defendant is held in Civil Contempt of the November 16, 1998 Order and imprisoned in the Onslow County Jail; however, the Defendant may purge himself of Civil Contempt by paying $4723.50 to the Onslow County Clerk of Court to be applied toward Defendant's arrears, and further by paying a monthly arrears amount beginning April 1, 2008 of $27.00. The Defendant's arrears, as of March 31, 2008 are $9447.00.
Here, the unchallenged and binding findings of fact establish that defendant owned automobiles and real estate. In addition, as discussed supra, we believe the trial court did not abuse its discretion by including the deposits that were made into defendant's bank accounts as income. These findings regarding defendant's assets support the trial court's conclusion that defendant had the present ability to comply with the order or to take reasonable measures to comply with the order, as the defendant could have sold or liquidated some of these assets, or borrowed the money in order to make the $4,723.50 purge payment. See id.

III. Conclusion
We affirm the trial court's order denying defendant's motion to modify and finding defendant to be in civil contempt.
Affirmed.
Judges CALABRIA and HUNTER, Robert N., Jr. concur.
Report per Rule 30(e).