ELMORE, Judge.
 

 *664
 
 Michael Andrew Burrow (defendant) appeals from judgments entered after he was found guilty of attempted felonious breaking or entering and attaining habitual felon status. He argues that the trial court erred in denying his request to instruct the jury on duress and that he received ineffective assistance of counsel (IAC). Defendant also appeals from orders entered finding him in direct criminal contempt and sentencing him to six consecutive thirty-day terms of imprisonment. After careful review, we find no error in the jury instructions, we conclude that defendant did not receive IAC, and we affirm the contempt orders.
 

 I. Background
 

 Defendant's evidence tended to show that around 21 April 2014, after he and his wife had an argument, defendant left their home and went to stay with his father in Lexington for around three days. Defendant testified that he later met with old friends in Winston-Salem where he rented a motel room, bought and used cocaine, and found a woman to smoke it with and talk to. Around 25 April 2014, defendant's wife reported defendant missing and posted flyers in "the bad areas of Winston-Salem," which she called "crack town." Defendant and the other woman met with two of her acquaintances, Detroit and Gabriel. The next couple of days were spent between staying at a "crack house," going to buy more drugs, going to dumpsters to retrieve discarded items and trade them for crack, and going to motels to use the drugs.
 

 The State's evidence tended to show that on 28 April 2014, Mitsy Johnson was home alone around 2 p.m. when she saw two men trying to pry open the back door. Ms. Johnson later identified defendant as one of the men, and she testified that he had a tool that looked like a screwdriver. She also stated that defendant told the other man (Gabriel) to get another tool. Ms. Johnson called her husband and asked him to call the police. In the meantime, she took pictures of defendant and Gabriel while they were trying to pry open the door. After one or two minutes, defendant looked up and saw Ms. Johnson taking pictures. Gabriel immediately fled toward the driveway while defendant stood there for a moment before following. The frame and edge of the door were bent and left with pry marks.
 

 Defendant testified that when he, Gabriel, and Detroit arrived at Ms. Johnson's house on 28 April 2014, Gabriel told defendant, "Get out, you're going to help do this." Afterward, when they left her house, Detroit drove defendant's vehicle, which ran out of gas on two occasions. They
 
 *665
 
 received assistance from a man outside in his yard, and later defendant walked to a diner where a patron gave him five dollars. Within thirty minutes to one hour after leaving Ms. Johnson's house, defendant contacted his wife, and he returned to their home later that night. The following day, defendant surrendered to the Surry County Sheriff's Office.
 

 On 8 December 2014, defendant was indicted for attempted felonious breaking or entering under N.C. Gen.Stat. § 14-54. The matter came on for trial during the 11 May 2015 Criminal Session of Superior Court in Surry County, the Honorable R. Stuart Albright presiding. At trial, defendant entered a stipulation in which he admitted that he contacted the Surry County Sheriff's Office on 29 April 2014 and stated that he had seen his photograph on the news, that he was the one who had attempted to break into the home, and that he was on his way to the Sheriff's Office to turn himself in.
 

 After he turned himself in, defendant informed Detective Sergeant J.D. Bryles that over the course of the last several days, he had been held against his will. Detective Bryles testified that defendant "just stated that they were forcing him to go out and do these break-ins so that they could generate more money and they could all purchase more crack cocaine." When Detective Bryles asked about weapons or threats, defendant did not indicate that any threats were made against him. Later in the conversation after Detective Bryles questioned why he did not request help when he came into contact with two different law enforcement
 
 *926
 
 agencies, defendant "acknowledged that he was not being held against his will."
 

 On 12 May 2015, the jury found defendant guilty as charged, and the following day, the jury found defendant guilty of attaining habitual felon status. The trial court sentenced defendant to a term of sixty-three to eighty-eight months imprisonment. Also on 12 May 2015, the trial court convened a contempt proceeding and found defendant guilty of six counts of direct criminal contempt for conduct prohibited by N.C. Gen.Stat. § 5A-11(a)(1) and (2). The trial court sentenced defendant to six consecutive terms of thirty-days imprisonment for the six findings of contempt. Defendant appeals.
 

 II. Analysis
 

 A. Jury Instruction
 

 Defendant argues that the trial court erred in denying his request to instruct the jury on duress because he presented substantial evidence of the defense.
 

 *666
 
 "[T]he question of whether a defendant is entitled to an instruction on the defense of duress or necessity presents a question of law, and is reviewed
 
 de novo.
 
 "
 
 State v. Edwards,
 
 ---N.C.App. ----, ----,
 
 768 S.E.2d 619
 
 , 621 (Feb. 17, 2015). "A trial court must give a requested instruction if it is a correct statement of the law and is supported by the evidence."
 
 State v. Haywood,
 

 144 N.C.App. 223
 
 , 234,
 
 550 S.E.2d 38
 
 , 45 (2001) (citation omitted). "For a particular defense to result in a required instruction, there must be substantial evidence of each element of the defense when viewing the evidence in a light most favorable to the defendant."
 
 State v. Brown,
 

 182 N.C.App. 115
 
 , 118,
 
 646 S.E.2d 775
 
 , 777 (2007) (citing
 
 State v. Ferguson,
 

 140 N.C.App. 699
 
 , 706,
 
 538 S.E.2d 217
 
 , 222 (2000) ). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
 

 Id.
 

 (quoting
 
 Ferguson,
 

 140 N.C.App. at 706
 
 ,
 
 538 S.E.2d at
 
 222 ).
 

 "In order to be entitled to an instruction on duress, a defendant must present evidence that he feared he would 'suffer immediate death or serious bodily injury if he did not so act.' "
 
 Haywood,
 

 144 N.C.App. at 234
 
 ,
 
 550 S.E.2d at 45
 
 (quoting
 
 State v. Cheek,
 

 351 N.C. 48
 
 , 73,
 
 520 S.E.2d 545
 
 , 560 (1999) ). Moreover, "a defense of duress 'cannot be invoked as an excuse by one who had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm.' "
 
 State v. Smarr,
 

 146 N.C.App. 44
 
 , 55,
 
 551 S.E.2d 881
 
 , 888 (2001) (quoting
 
 State v. Kearns,
 

 27 N.C.App. 354
 
 , 357,
 
 219 S.E.2d 228
 
 , 231 (1975) ) (quotations omitted).
 

 Here, the evidence showed that Gabriel drove defendant's vehicle to Ms. Johnson's house while defendant was in the passenger seat drinking and smoking crack cocaine and marijuana. Gabriel, carrying a knife, and defendant, carrying a lug wrench, eventually walked to the back door. After realizing Ms. Johnson was taking their pictures, Gabriel fled first, and after a few moments, defendant followed Gabriel. When asked if he attempted to get away from Detroit or Gabriel at any point in time, defendant testified, "Yes. But they pretty much had control of my car.... Either Gabriel would drive or Detroit would drive. I was sitting in the passenger seat smoking crack." After testifying that both Gabriel and Detroit had knives, he stated, "At a point I did get scared of them ... [b]ecause they talked about stealing my truck." He admitted that they never "pull[ed] a knife" on him.
 

 Viewing the evidence in the light most favorable to defendant, defendant did not present substantial evidence of each element of the defense, requiring a jury instruction. Defendant failed to show that his actions were caused by a reasonable fear that he would suffer immediate death or serious bodily injury if he did not act. Although defendant
 
 *667
 
 argues that over the course of several days Detroit and Gabriel were holding him against his will, defendant had at least two opportunities to seek help and escape. Officer William Widener stopped to assist defendant and Gabriel when they ran out of gas, and moments later, Officer Widener followed them to the gas station after he realized a missing person report was filed for defendant. Even though defendant was alone with Officer Widener at the gas station and
 
 *927
 
 Gabriel was with at least four other officers around twenty-five feet away, defendant never stated he was being held against his will. Rather, he stated that he was in good health, that he was going through a separation with his wife, that he did not want to be around her, that he took the battery out of his phone so that she could not call him, and that he did not need to be listed as a missing person.
 

 In declining to instruct the jury on duress, the trial court noted that "defendant testified himself that these other participants in the crimes never pulled a knife on [defendant] specifically. And he said that he was scared of the other two individuals because they talked about stealing his truck." Moreover, the trial court stated, "By the defendant's own admission, when he was at the gas station where Officer Widener was located, the Court finds that there's nothing in the record to suggest that the defendant would have exposed himself to harm of any kind if he had surrendered to or asked Officer Widener for help at the gas station."
 

 Because the trial court found,
 
 inter alia,
 
 that defendant had the opportunity to avoid doing the act in question, it concluded that defendant was not entitled to an instruction on duress. Based on the evidence discussed above and the record in this case, the trial court properly denied defendant's request for an instruction on duress.
 

 B. Ineffective Assistance of Counsel
 

 Next, defendant claims that he received IAC because his trial counsel did not attempt to introduce into evidence the missing person report or photo, a money transfer receipt, a motel receipt, and his wife's cell phone which contained text messages that he sent her in April 2014. Defendant argues that he was prejudiced by his trial counsel's decision not to attempt to introduce any of the listed evidence because the items would have corroborated his version of the events.
 

 "IAC claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing."
 
 State v. Fair,
 

 354 N.C. 131
 
 , 166,
 
 557 S.E.2d 500
 
 , 524 (2001). However,
 
 *668
 
 "should the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent MAR proceeding."
 
 Id.
 
 at 167,
 
 557 S.E.2d at 525
 
 (citation omitted).
 

 "When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness."
 
 State v. Fletcher,
 

 354 N.C. 455
 
 , 481,
 
 555 S.E.2d 534
 
 , 550 (2001) (citing
 
 Strickland v. Washington,
 

 466 U.S. 668
 
 , 687-88,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984) ). Under the two-part test, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
 

 Id.
 

 (quoting
 
 Strickland,
 

 466 U.S. at 687
 
 ,
 
 104 S.Ct. 2052
 
 ). "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
 

 Id.
 

 (quoting
 
 Strickland,
 

 466 U.S. at 687
 
 ,
 
 104 S.Ct. 2052
 
 ). Our Supreme Court has previously stated that "[c]ounsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear."
 
 Id.
 
 at 482,
 
 555 S.E.2d at 551
 
 .
 

 Here, the trial court engaged in a colloquy with defendant about his decision to testify and present evidence. When the trial court asked what his other evidence would be, generally, defendant replied, stating the missing person report and photo, a money wire receipt, and a motel receipt. Later in the trial, the trial court asked defendant off the record about whether a cell phone on the desk in front of him was turned on, and defendant stated, "No, sir. This is just evidence, sir. I'm sorry." Again, the trial court told defendant that the cell phone must be turned off, and defendant stated, "I was trying to present text messages to you, Your
 
 *928
 
 Honor, so you could see. But it ain't coming into evidence[.]"
 

 Although defendant's trial counsel decided not to introduce any of the physical evidence above, defendant's wife was permitted to testify about the money order, which she sent on 29 April 2014
 
 after
 
 defendant returned to their home, as well as the content of the missing person report. Moreover, defendant's wife testified about the text messages that she received from defendant while he was with Detroit and Gabriel as follows:
 

 Q: How many would you say he was sending you?
 

 A: In those, in the three days from the time he was-I found him to the time-over a thousand, or close to it.
 

 *669
 
 Q: Did he ever tell you that he felt threatened?
 

 A: He-not, not during the text messages.
 

 On appeal, defendant argues that because "trial counsel made no attempt to introduce any of the text messages or the other evidence [defendant] listed to the trial court, and, thereby, waived any appellate review of the evidence, trial counsel's performance fell below an objective standard of professional reasonableness." We disagree.
 

 Under these facts, defendant's trial counsel made a tactical decision not to attempt to introduce allegedly corroborative evidence. Although defendant now argues that he wanted his trial counsel to admit his wife's physical cell phone so that the jury could use the phone to read text messages between the two, defendant cannot show that his trial counsel's performance was deficient. Second, even if defendant could show deficient performance, he cannot establish prejudice such that he was deprived of a fair trial. Defendant entered a stipulation as to the underlying offense, and he was able to present testimony on his theory of duress. Defendant cannot establish that his trial counsel's decision not to attempt to admit the physical evidence prejudiced his defense.
 

 C. Contempt
 

 Lastly, defendant claims that the trial court erred in sentencing him to six consecutive thirty-day terms of imprisonment based on six findings of direct criminal contempt. Defendant argues that criminal contempt should be classified as a Class 3 misdemeanor, and consecutive sentences may not be imposed for Class 3 misdemeanors.
 

 While trial courts in this State have sentenced contemnors to consecutive sentences, this Court has never been asked to decide if such practice is permissible. Subject to the listed statutory exceptions, N.C. Gen.Stat. § 5A-12(a) (2015) provides that a "person who commits criminal contempt, whether direct or indirect, is subject to censure, imprisonment up to 30 days, fine not to exceed five hundred dollars ($500.00), or any combination of the three [.]" Under N.C. Gen.Stat. § 5A-12(c) (2015), "[t]he judicial official who finds a person in contempt may at any time withdraw a censure, terminate or reduce a sentence of imprisonment, or remit or reduce a fine imposed as punishment for contempt if warranted by the conduct of the contemnor and the ends of justice."
 

 Defendant argues that a finding of criminal contempt must be a misdemeanor because N.C. Gen.Stat. § 14-1 (2015) defines a felony and then provides, "Any other crime is a misdemeanor." Further, N.C. Gen.Stat. § 14-3(a)(2) (2015) states that unclassified misdemeanors with a
 
 *670
 
 maximum punishment of thirty days or less or only a fine are Class 3 misdemeanors. Thus, because consecutive sentences may not be imposed if all convictions are for Class 3 misdemeanors,
 
 see
 
 N.C. Gen.Stat. § 15A-1340.22(a) (2015), defendant claims that consecutive sentences may not be imposed for multiple findings of contempt.
 

 Defendant's argument fails to take into account the entirety of N.C. Gen.Stat. § 14-3, which dictates that the offense actually be a misdemeanor before labeling it a Class 3 misdemeanor. Our Supreme Court, however, has described criminal contempt as "
 
 sui generis,
 
 " meaning "[o]f its own kind or class," Black's Law Dictionary 1475 (8th ed.2004), and as "a petty offense with no constitutional right to a jury trial."
 
 Blue Jeans Corp. v. Clothing Workers,
 

 275 N.C. 503
 
 , 508, 511,
 
 169 S.E.2d 867
 
 , 870, 872 (1969). Moreover, in
 
 State v. Reaves,
 
 this Court held
 
 *929
 
 that a criminal contempt adjudication does not constitute a "prior conviction" for purposes of the North Carolina Structured Sentencing Act.
 
 142 N.C.App. 629
 
 , 633,
 
 544 S.E.2d 253
 
 , 256 (2001). We stated, "Had the General Assembly intended that criminal contempt adjudications as well as misdemeanors be considered 'crimes,' so as to qualify as 'prior conviction' under G.S. § 15A-1340.11(7), it would have been a simple matter [for it] to [have] include[d] th[at] explicit phrase within the statutory amendment."
 
 Id.
 
 at 636,
 
 544 S.E.2d at 257-58
 
 (internal citations and quotations omitted). More recently, in
 
 State v. Luke,
 

 207 N.C.App. 749
 
 ,
 
 2010 WL 4292027
 
 , at *4 (Nov. 2, 2010) (COA10-169),
 
 [1]
 
 this Court stated, "[A] criminal contempt adjudication is not a misdemeanor in North Carolina."
 

 In N.C. Gen.Stat. § 5A-12, the General Assembly provided the possible punishments for contempt, including imprisonment up to thirty days. Nothing in that statute or in Chapter 5A prohibits consecutive sentences for multiple findings of contempt.
 
 Compare
 
 N.C. Gen.Stat. § 15A-1354(a) (2015) ("When multiple sentences of imprisonment are imposed on a person at the same time or when a term of imprisonment is imposed on a person who is already subject to an undischarged term of imprisonment, ... the sentences may run either concurrently or consecutively, as determined by the court. If not specified or not required by statute to run consecutively, sentences shall run concurrently."),
 
 with
 
 N.C. Gen.Stat. § 15A-1340.22(a) ("Consecutive sentences shall not be imposed if all convictions are for Class 3 misdemeanors.").
 

 *671
 
 Defendant does not challenge the underlying findings in the contempt orders and presents no other argument as to why the trial court erred. Because a finding of contempt is not a Class 3 misdemeanor, the trial court did not err in sentencing defendant to six consecutive thirty-day terms of imprisonment.
 

 III. Conclusion
 

 The trial court did not err in denying defendant's request to instruct the jury on duress, and defendant did not receive IAC. Additionally, we affirm the trial court's orders sentencing defendant to six consecutive thirty-day terms of imprisonment based on six findings of direct criminal contempt.
 

 NO ERROR and AFFIRMED.
 

 Judges DAVIS and DIETZ concur.
 

 [1]
 

 While "[a]n unpublished decision of the North Carolina Court of Appeals does not constitute controlling legal authority[,]" N.C. R.App. P. 30(e)(3), we find the Court's analysis persuasive and adopt it here.