IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-136

Filed 21 May 2025

Burke County, Nos. 01CVS000952-110, 23CRS000703-110

STATE BOARD OF EXAMINERS OF PLUMBING
HEATING AND FIRE SPRINKLER CONTRACTORS, Plaintiff,

v.

NEEL HUDSON, individual and d/b/a
HUDSON PLUMBING AND ELECTRIC, Defendant.

Appeal by Defendant from judgment entered 17 August 2023 by Judge Reggie

E. McKnight in Burke County Superior Court. Heard in the Court of Appeals 25

September 2024.

> *Wesley E. Starnes, PC, by Wesley E. Starnes, for Defendant-Appellant.*
>
> *Young Moore & Henderson, P.A., by Reed N. Fountain and John N. Hutson, III, for Plaintiff-Appellee.*

CARPENTER, Judge.

Neel Hudson ("Defendant") appeals from the trial court's 18 July 2023 "Order

in Indirect Criminal Proceeding" and the 17 August 2023 "Order of Contempt and

Order of Arrest." After careful review, we affirm.

## I. Factual & Procedural Background

On 8 June 2001, the State Board of Examiners of Plumbing, Heating, and Fire

Sprinkler Contractors ("Plaintiff") filed a complaint alleging Defendant violated

sections 87-21(a)(1) and (5) of our General Statutes by engaging in the business of

plumbing contracting without a valid license. Defendant did not respond to the complaint. On 30 June 2001, Plaintiff filed a motion for entry of default. On 2 August 2001, the Burke County Clerk of Court entered default judgment against Defendant. On 15 August 2001, the trial court entered a judgment of permanent injunction (the "Injunction") which prohibited Defendant from "engaging in business as a plumbing, heating, or fire sprinkler contractor at all such times as he is not licensed to do so pursuant to Article 2, Chapter 87, of the General Statutes of North Carolina."

On 23 January 2009, Plaintiff filed a motion for order to show cause alleging Defendant violated the Injunction on four separate occasions between September 2001 and April 2005. On 27 March 2009, the trial court entered an order of contempt, finding beyond a reasonable doubt that Defendant committed the violations alleged by Plaintiff. The trial court sentenced Defendant to 120 days in the Burke-Catawba District Confinement Facility, but Plaintiff consented to Defendant serving a lesser sentence of ten days in confinement consisting of twenty overnight sessions.

On 6 April 2021, after receiving a new complaint concerning Defendant, Thomas Johnston, a field investigator for Plaintiff, travelled to 2107 Woodside Terrace (the "Home") to investigate. Upon his arrival at the Home, Johnston met with Sharon Eller, the homeowner, and took her statement. In the basement of the Home, Johnston observed a gas-fired heating unit (the "new HVAC system") and determined it was installed incorrectly. Johnston also concluded that only someone

with a valid license would be authorized to install the new HVAC System.

On 22 April 2021, Jonathan Yerkes, another field investigator for Plaintiff, met with Defendant to discuss the complaint and obtain a statement. In Defendant's statement he acknowledged that he knew Gary Eller, Sharon Eller's late husband, and that he had been "fixing and servicing" the Eller's previous HVAC system (the "old HVAC system") for quite some time. Defendant told Yerkes that the old HVAC system would freeze up and thaw out, which resulted in water draining into the duct board of the plenum and onto the basement floor. To address this problem, Defendant "repaired a 12-inch section of duct board that was soaked from water." Defendant explained this work consisted of "removing [that] section of duct board and replacing it due to it being soaked."

Defendant also told Yerkes that while he was at the Home servicing the old HVAC system, the Ellers asked him if he would replace the old HVAC system with a new one. Defendant told the Ellers he was not authorized to install a new system. According to Defendant, he did not install the new HVAC system but rather procured the equipment for the Ellers on or about 30 May 2019 for someone else to install. Defendant could not identify the person the Ellers hired to install the new HVAC system. In response to Defendant's remarks, Yerkes informed Defendant that the work he performed on the old HVAC system—replacing and altering duct work—also required a license, but Defendant disagreed, stating he believed the work he

performed on the old HVAC system was merely "repair work."

Yerkes and Defendant next discussed an invoice (the "Invoice") Defendant issued to the Ellers on 30 May 2019 for a total of $7,543.56. The Invoice included a $6,278.50 charge for parts and $700.00 charge for labor. Defendant told Yerkes that the $700.00 labor charge was for the duct work repairs he performed on the old HVAC system and the $6,278.50 parts charge was for his procurement of the new HVAC system. On the Invoice, in the section entitled "description of service work," there were four entries: "(1) Replaced unit bad compressor 30y/o unit; (2) Found unit frozen – Replaced unit; (3) Replaced section of ductboard; (4) Return air suction Flooded water." When Yerkes questioned Defendant regarding the first entry—"Replaced unit bad compressor 30y/o unit"—Defendant explained he mistakenly wrote "replaced" and that he meant to write the word "repaired." According to Yerkes, Defendant was "adamant" it was a word mix-up.

On 26 May 2022, Plaintiff filed a motion for order to show cause alleging that on or about 20 May 2019, Defendant, again, violated the Injunction. On 18 July 2023, Defendant appeared before the trial court for a contempt hearing. At the outset, Plaintiff moved to continue because Sharon Eller was not present to testify. The trial court denied Plaintiff's motion. At the close of Plaintiff's evidence, Defendant moved to dismiss, arguing Plaintiff's evidence was insufficient to establish he violated the Injunction since there was no direct evidence he installed the new HVAC system. The

trial court denied Defendant's motion stating, "there is, at this point, substantial evidence reasonably necessary to persuade what would be reasonable jury or a trier of fact in this case." At the close of all the evidence, Defendant renewed his motion. The trial court denied the motion and informed Defendant he was being held in criminal contempt for violating the Injunction. The trial court sentenced Defendant to thirty days of active imprisonment and a $250.00 fine. The trial court also informed the parties that it was required, pursuant to section 5A-15(f), to issue written findings in relation to its finding of contempt beyond a reasonable doubt.

That same day, the trial court filled out and signed a form document entitled: "Order in Indirect Criminal Contempt Proceeding" (the "Form"). The check boxes on the Form did not directly correspond to the specific circumstances of Defendant's contempt. The trial court checked a box on the Form stating, "Defendant was able to comply with the subpoena or take reasonable measures to comply and failed to do so without any lawful excuse for failing to appear and testify; and therefore is in indirect criminal contempt[.]" The Form also reflected Defendant's fine of $250.00 and sentence of thirty days of active imprisonment, which was to begin on 7 August 2023.

Also on 18 July 2023, Defendant filed two written notices of appeal: one from the trial court's oral ruling and another concerning the Form. Each notice specified the file number, 01 CVS 952. On 26 July 2023, Defendant filed an amended notice of appeal stating the notices were signed before the file number 23 CRS 703 "had been

assigned or was known" to Defendant.

On 17 August 2023, the trial court entered the "Order of Contempt and Order of Arrest" (the "Order") which included thirty-two detailed findings of fact and six conclusions of law. On 7 September 2023, Defendant gave written notice of appeal from the Order.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(4) (2023).

## III. Issues

The issues are whether: (1) the trial court erred by denying Defendant's motion to dismiss; (2) the trial court had jurisdiction to enter the Order; (3) findings of fact 13, 14, 15, 28, 31, and 32 are supported by competent evidence; and (4) the criminal contempt proceeding was barred by a two-year statute of limitations.

## IV. Analysis

### A. Motion to Dismiss

First, Defendant argues the trial court erred by denying his motion to dismiss. Specifically, Defendant asserts that Plaintiff's evidence was insufficient because Plaintiff presented no direct evidence that Defendant installed the new HVAC system and his conduct regarding the duct work fell within the carve-out exception.

#### 1. Standard of Review

As a threshold matter, we consider which standard of review applies to a trial

court's denial of a motion to dismiss during an indirect criminal contempt proceeding. Our consideration necessitates a brief discussion of contempt in its various forms.

We begin with the principle that contempt is "'*sui generis*,' meaning '[o]f its own kind or class.'" *State v. Burrow*, 248 N.C. App. 663, 670, 789 S.E.2d 923, 928 (2016) (quoting *sui generis*, Black's Law Dictionary 1475 (8th ed. 2004)). In other words, contempt generally is not wholly civil or wholly criminal.

There are two "kinds" of contempt: civil and criminal. *O'Briant v. O'Briant*, 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985). Although "the demarcation between the two may be hazy at best," *id.* at 434, 329 S.E.2d at 372, the distinction becomes apparent when considering the "purpose for which the power is exercised" and the potential range of consequences, *id.* at 434, 329 S.E.2d at 372. If the goal is to punish for a past-act that "interfere[d] with the administration of justice," the contempt is criminal in nature. *Id.* at 434, 329 S.E.2d at 372. On the other hand, if the intention is to "preserve the rights of private parties and to compel obedience," the contempt is civil in nature. *Id.* at 434, 329 S.E.2d at 372. To distinguish between the two, the question is whether the contemnor is subject to punishment for previously disobeying an order of the court or is forewarned to comply in the future with an order of the court.

Complicating matters, there are two "divisions" of contempt: direct and indirect. *State v. Wendorf*, 274 N.C. App. 480, 843, 852 S.E.2d 898, 902 (2020)

(citation omitted). Put simply, direct contempt occurs in the presence of the court while indirect contempt occurs outside of the presence of the court. *Id.* at 483, 852 S.E.2d at 902.

Additionally, there are two kinds of criminal contempt proceedings: "summary proceedings, which are for direct criminal contempt, and plenary proceedings, which are for indirect criminal contempt." *Wendorf,* 274 N.C. App. at 487, 852 S.E.2d at 486; *but see O'Briant,* 313 N.C. at 436, 329 S.E.2d at 373 (explaining that summary proceedings are not appropriate for direct criminal contempt "where a court does not act *immediately* to punish acts constituting a direct contempt . . .") (emphasis added).

An indirect criminal contempt proceeding functions similarly to an ordinary criminal trial. For example, in an indirect criminal contempt proceeding the moving party has the burden of proving the defendant committed the contemptuous acts beyond a reasonable doubt. *State v. Coleman,* 188 N.C. App. 144, 150, 655 S.E.2d 450, 453–54 (2008). Additionally, a show-cause order in a criminal contempt proceeding, while not "equivalent" to a criminal indictment, *Wendorf,* 274 N.C. App. at 486, 852 S.E.2d at 904, is "akin" to one, *Coleman,* 188 N.C. App. at 150, 655 S.E.2d at 453. Further, indirect criminal contempt proceedings trigger certain "constitutional safeguards," including reasonable notice and an opportunity to be heard. *O'Briant,* 313 N.C. at 435, 329 S.E.2d at 373 (citation omitted).

Based on these similarities, we conclude the substantial evidence standard is

the appropriate standard to apply here. *See State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted). Accordingly, we review the trial court's denial of Defendant's motion to dismiss de novo. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "'Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

On a motion to dismiss, the question is whether "there is substantial evidence (1) of each essential element of the offense charged . . . , and (2) of defendant's being the perpetrator of such offense." *Powell*, 299 N.C. at 98, 261 S.E.2d at 117 (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980); *see State v. Beck*, 385 N.C. 435, 438, 894 S.E.2d 729, 732 (2023) ("Substantial evidence is the amount necessary to persuade a rational juror to accept a conclusion.") (internal quotation marks and citation omitted). Substantial evidence can be direct, circumstantial, or both. *State v. Shelton*, 293 N.C. App. 154, 157, 899 S.E.2d 894, 897 (2024); *State v. Parker*, 354 N.C. 268, 279, 553 S.E.2d 885, 894 (2001) (explaining "[c]ircumstantial evidence and direct evidence are subject to the same test for sufficiency") (citing *State v. Sokolowski*, 351 N.C. 137, 143, 522 S.E.2d 65, 69 (1999)). The distinction can be explained as follows:

> Direct evidence is that which is immediately applied to the fact to be proved, while circumstantial evidence is that which is indirectly applied, by means of circumstances from which the existence of the principal fact may reasonably be deduced or inferred. In other words . . . circumstantial evidence is merely direct evidence indirectly applied.

*Shelton*, 293 N.C. App. at 157, 899 S.E.2d at 897 (quoting *State v. Wright*, 275 N.C. 242, 249–50, 166 S.E.2d 681, 686 (1969) (citation omitted)).

"In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Fritsch*, 351 N.C. 373, 378–79, 526 S.E.2d 451, 455 (2000) (citing *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992)).

Here, under the terms of the Injunction, Defendant was "permanently enjoined from . . . engaging in business as a plumbing, heating or fire sprinkler contractor at all such times as he is not properly licensed to do so[.]" In this proceeding, Plaintiff alleged Defendant violated the Injunction by performing two distinct acts: installing the new HVAC system and removing and replacing the duct work of the old HVAC system. Therefore, to survive Defendant's motion to dismiss, Plaintiff was required to present substantial evidence that Defendant engaged in at least one of these acts. *See Coleman*, 188 N.C. App. at 150, 655 S.E.2d at 453–54 (explaining it is the State's burden to establish that the alleged contemptuous act occurred).

### 2. New HVAC System Installation

Defendant asserts Plaintiff's evidence was insufficient to establish that he installed the new HVAC system. We disagree.

At the contempt proceeding, Plaintiff presented the following evidence tending to show Defendant installed the new HVAC system: the Invoice, Defendant's written statement, and testimony from Johnston and Yerkes, Plaintiff's field investigators. Plaintiff also introduced evidence that Defendant previously violated the Injunction. Additionally, Defendant testified on direct that he gave Sharon Eller approximately $600.00 to cover a bill from another service provider who worked on the new HVAC system after it was installed. Although there was no direct evidence that Defendant installed the new HVAC system, the circumstantial evidence, when viewed in the light most favorable to Plaintiff, was sufficient to persuade a rational juror that Defendant installed the new HVAC system. *See Shelton*, 293 N.C. App. at 157, 899 S.E.2d at 897.

First, the Invoice prepared by Defendant states Defendant "Replaced unit bad compressor 30y/o unit," and "Found unit frozen – Replaced unit." Although Defendant contends the word "unit" in "replaced unit" refers only to the "compressor unit"—a component within the old HVAC system—a rational juror, examining the plain language of the Invoice, could interpret the word "unit" to mean the entire system.

Second, Defendant's statements regarding the Invoice and the work performed

were inconsistent. For example, during his interview with Yerkes, Defendant explained he meant to write the word "repair[ed]" instead of "replac[ed]" on the Invoice. But when Defendant testified at the contempt hearing, he stated that the first Invoice entry was for his replacement of the compressor "unit" within the old HVAC system, not the "unit" as a whole. Similarly, Defendant's testimony regarding the duct work was also at odds with his prior statement. In his statement, Defendant stated he removed and replaced a 12-inch section of duct work "due to it being soaked." When he testified, however, Defendant stated the duct board was not soaked and that he removed the 12-inch section, allowed it to thaw, and then reinstalled that same section.

Finally, there was additional circumstantial evidence tending to show Defendant installed the new HVAC system, including Defendant's previous violations of the Injunction and his $600.00 payment to Sharon Eller to cover a bill she acquired from another service provider who worked on the new HVAC system after it was installed. When asked why he paid Sharon Eller this money, Defendant testified that he "wanted to be released from anything to do with this unit whatsoever." Defendant's testimony tends to show he did more than just procure equipment for the Ellers.

In sum, although there was no direct evidence that Defendant installed the new HVAC system, the circumstantial evidence was more than sufficient to survive

Defendant's motion to dismiss. A rational juror could reasonably infer from the evidence that Defendant installed the new HVAC system. *See Smith*, 300 N.C. at 78–79, 265 S.E.2d at 169. Accordingly, the trial court properly denied Defendant's motion to dismiss.

### 3. Duct Work Repair

Defendant further argues that the evidence was insufficient to establish the duct work "repair" he performed on the old HVAC system constituted a violation of the Injunction. Specifically, Defendant argues this work falls within the "carve out exception" of section 87-21(c). We disagree.

A license is not required to "make minor repairs or minor replacements to an already installed system of . . . heating or air conditioning[.]" N.C. Gen. Stat. § 87-21(c) (2023). A minor replacement or repair is defined as the "replacement of *parts* in an installed system which do not require any change in energy source, fuel type, or routing or sizing of venting or piping." *Id.* (emphasis added). Section 87-21(c) defines "parts" as "a compressor, coil, contactor, motor, or capacitor." *Id.*

In his statement prepared for Yerkes, Defendant stated the following in regard to the duct work: "[P]rior to the new install I repaired a 12-inch section of duct board that was soaked from water. I state that this work consisted of me removing the section of duct board and replacing it due to it being soaked."

Because the "carve out exception" identifies specific "parts" for which a minor

repair or replacement is permissible without a license, and duct work is not included in this list, Defendant's conduct does not fall within the "carve out exception." *See* N.C. Gen. Stat. § 87-21(c). Therefore, Defendant's admission that he "remov[ed] the section of duct board and replac[ed] it" was substantial evidence upon which a rational juror could conclude that Defendant violated the Injunction. *See Smith*, 300 N.C. at 78–79, 265 S.E.2d at 169. Accordingly, the trial court properly denied Defendant's motion to dismiss for insufficient evidence.

**B. Jurisdiction**

Next, Defendant argues the trial court lacked jurisdiction to enter the Order because he gave notice of appeal before the trial court entered the Order. We disagree.

"Whether the trial court had jurisdiction is a question of law that [this Court] review[s] de novo." *State v. Lebeau*, 271 N.C. App. 111, 113, 843 S.E.2d 317, 319 (2020). "'Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Williams*, 362 N.C. at 632–33, 669 S.E.2d at 294 (quoting *In re Greens of Pine Glen*, 356 N.C. at 647, 576 S.E.2d at 319).

Generally, "when a party gives notice of appeal, the trial court is divested of jurisdiction until the appellate court returns a mandate in the case." *SED Holdings, LLC v. 3 Star Properties, LLC*, 250 N.C. App. 215, 219, 791 S.E.2d 914, 919 (2016).

When a party gives notice of appeal, "the trial judge becomes *functus officio*." *RPR & Assocs. Inc. v. Univ. of N.C.-Chapel Hill*, 153 N.C. App. 342, 346–47, 570 S.E.2d 510, 513 (2002) (citing *Bowen v. Motor Co.*, 292 N.C. 633, 635, 234 S.E.2d 748, 749 (1977)). "*Functus officio*, which translates from Latin as 'having performed his [or] her office,' is defined as being 'without further authority or legal competence because the duties and functions of the original commission have been fully accomplished.'" *Id.* at 347, 570 S.E.2d at 513 (quoting *functus officio*, Black's Law Dictionary 682 (7th ed.1999)).

This general rule, however, is less straightforward than its language suggests. Indeed, while final judgments are "always appealable," *see SED Holdings, LLC*, 250 N.C. App. at 220, 791 S.E.2d at 919 (citation omitted), "a litigant cannot deprive the trial court of jurisdiction to determine a case on its merits by appealing from a nonappealable interlocutory order of the trial court," *Velez v. Dick Keffer Pontiac-GMC Truck, Inc.*, 114 N.C. App. 589, 591, 551 S.E.2d 873, 875 (2001). In other words, a party's notice of appeal does not automatically divest the trial court of jurisdiction and trigger our jurisdiction if no final judgment or appealable interlocutory order has been entered by the trial court. *See id.* at 591, 551 S.E.2d at 875. Moreover, "the trial court maintains jurisdiction to enter a written order after notice of appeal has been given where the order does not '*affect*[] *the merits*, but rather is a chronicle of the findings and conclusions' decided at a prior hearing." *State v. Fields*, 268 N.C. App. 561, 565, 836 S.E.2d 886, 889 (2019) (quoting *State v. Walker*, 255 N.C. App. 828, 830,

806 S.E.2d 326, 329 (2017)) (emphasis and alteration in original).

In the instant case, the trial court conducted the contempt proceeding on 18 July 2023. At the conclusion of the hearing, the trial court made multiple oral findings of fact to support its determination that Defendant was being held in criminal contempt for violating the Injunction. The trial court also informed the parties that it was required, pursuant to section 5A-15(f), to issue written findings in relation to its finding of contempt beyond a reasonable doubt. That same day, the trial court filled out and signed the Form. On the Form, the trial court checked a box indicating that, Defendant "was able to comply with the subpoena or take reasonable measures to comply and failed to do so without any lawful excuse for failing to appear and testify; and therefore is in indirect criminal contempt[.]" The Form also indicated Defendant's sentence of thirty days of active imprisonment and his $250.00 fine. The Form was not file-stamped.

On 18 July 2023, Defendant filed two notices of appeal. On 26 July 2023, Defendant filed an amended notice of appeal reflecting the correct docket number. On 17 August 2023, thirty days after the contempt proceeding, the trial court entered the Order which included thirty-two detailed findings of fact and six conclusions of law. Unlike the Form, the Order was file-stamped. On 7 September 2023, Defendant entered written notice of appeal from the Order.

The Order was the trial court's final judgment in this matter. Not only was

the Order file-stamped, *see* N.C. Gen. Stat. § 1A-1, Rule 58 (2023) ("[A] judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court pursuant to Rule 5."), it also included the trial court's findings of fact and conclusions of law pursuant to section 5A-15(f), *see* N.C. Gen. Stat. § 5A-15(f) (2023) ("If the person is found to be in contempt, the judge must make findings of fact and enter judgment."). Thus, Defendant's notice of appeal from the Form did not divest the trial court of jurisdiction because the Form was neither a final judgment nor an appealable interlocutory order. *See SED Holdings, LLC*, 250 N.C. App. at 220, 791 S.E.2d at 919. Accordingly, the trial court had jurisdiction to enter the Order.

### C. Challenged Findings of Fact

In his next argument, Defendant asserts the following findings of fact are not supported by competent evidence: 13, 14, 15, 28, 31, and 32. We disagree.

"In general, 'our standard of review for contempt cases is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.'" *Wendorf*, 274 N.C. App. at 483, 852 S.E.2d at 902 (quoting *State v. Phair*, 193 N.C. App. 591, 593, 668 S.E.2d 110, 111 (2008)). "'Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary . . . .'" *Id.* at 483, 852 S.E.2d at 902 (quoting *State v. Salter*, 264 N.C. App. 724, 732, 826 S.E.2d 803, 809 (2019)). "Meanwhile, conclusions of law are reviewed de novo and are subject to

full review." *State v. Aguilar*, 287 N.C. App. 248, 252, 882 S.E.2d 411, 415 (2022) (internal quotation marks and citations omitted). The trial court, sitting as the trier of fact, "is in the best position to weigh the evidence, given that he has heard all of the testimony and observed the demeanor of witnesses." *State v. Hughes*, 353 N.C. 200, 207, 539 S.E.2d 625, 631 (2000).

### 1. Findings of Fact 13, 14, and 15

Defendant asserts the trial court's findings of fact 13, 14, and 15 are not supported by competent evidence. Defendant contends these findings, which all relate to Johnston's observations regarding the condition of the new HVAC system—a system Defendant denies installing—were not supported by competent evidence because Johnston's testimony was improper as he was not qualified as an expert.

Rule 701 provides that a non-expert witness can testify in the form of an opinion or inference so long as his opinion or inference is "rationally based on [his] perception . . . and helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2023).

In the instant case, Johnston testified that the new HVAC system was installed incorrectly. Specifically, Johnston testified that because the new HVAC system's "venting [was] backwards," the new HVAC system was "exhausting [] carbon monoxide into the occupied space where [Sharon Eller] resides." Defendant objected to Johnston's testimony, arguing Johnston was not qualified to testify regarding the

proper installation of the new HVAC system. In essence, Defendant asserted Johnston needed to be admitted as an expert to testify as to the propriety of the installation. The trial court overruled Defendant's objections.

Based on Johnston's testimony, the trial court found that:

13. The unit was improperly installed in that the exhaust of the heating system was venting into the basement as opposed to venting outside the home.

14. As a result of the improper venting of the unit, whenever it was operational, carbon monoxide would vent into the basement. The Court takes notice of the dangers posed by improperly vented carbon monoxide gas into an occupied residence.

15. Photographs taken by Mr. Johnston and admitted into evidence depict the unit and show its improper ventilation.

Even if we were to assume Johnston's testimony was improper and conclude the trial court erred by making findings of fact 13, 14, and 15, these findings have no bearing on the trial court's ultimate determination that Defendant violated the Injunction. As Johnston explained during the contempt proceeding, different standards apply to licensed and unlicensed service providers. For an unlicensed provider, like Defendant, the only concern is whether the provider did or did not perform the installation. In other words, Plaintiff was not required to demonstrate that Defendant installed the new HVAC system incorrectly to establish he violated the Injunction. Instead, Plaintiff only had to demonstrate Defendant installed the new HVAC system. Put simply, even if we were to agree with Defendant and set

aside these findings, the trial court's remaining findings support the conclusion that Defendant willfully violated the Injunction. Accordingly, even assuming the trial court erred by making findings of fact 13, 14, and 15, any error was not prejudicial.

**2. Findings of Fact 28, 31, and 32**

Defendant also asserts the trial court's findings of fact 28, 31, and 32 are not supported by competent evidence. Defendant, however, has not provided any supporting argument for his assertion in this section of his brief. Rather he "incorporates . . . by reference" his arguments from the first section of his brief regarding the trial court's denial of his motion to dismiss. Because Defendant makes no mention of findings of fact 28 and 32 in his fourteen pages of motion to dismiss argument, we deem these challenges as abandoned and binding. *See* N.C. R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."). It is not the duty of this Court to craft an appellant's arguments for them. *See Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606, 615 S.E.2d 350, 358, (2005); *Viar v. N. Carolina Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005).

We will, however, review ultimate finding 31 since Defendant indirectly challenged this finding in the context of his motion to dismiss argument. *See In re G.C.*, 384 N.C. 62, 65 n.3, 884 S.E.2d 658, 661 (2023); *State v. Johnson*, 246 N.C. App. 677, 683, 783 S.E.2d 753, 758–59 (2016) ("[W]e do not base our review of findings of

fact and conclusions of law on the label in the order, but rather, on the substance of the finding or conclusion.").

Ultimate finding 31 states:

> 31. The Court acknowledges that Plaintiff did not present direct testimony that Defendant installed the unit; however, Plaintiff presented sufficient circumstantial evidence to lead the court to believe – beyond a reasonable doubt – that Defendant did in fact install the unit and replaced duct board for the unit.

Similar to our reasoning outlined above, ultimate finding 31 is supported by the evidentiary findings which are supported by competent evidence. The trial court found that the plain language of the Invoice contradicted Defendant's statement that he did not install the new HVAC system and found that the Invoice and Defendant's statement established Defendant replaced the ductwork on the old HVAC system. Further, the trial court found that Defendant's testimony at the contempt hearing contradicted his statement prepared for Yerkes and that Defendant was not a credible witness. These findings are supported by competent evidence, including the Invoice, Johnston and Yerkes' testimony, and circumstantial evidence including, Defendant's previous violations of the Injunction, $600.00 payment to Sharon Eller, and inconsistent statements regarding the Invoice and the work performed. Accordingly, the evidence was adequate to support the trial court's evidentiary findings which support ultimate finding 31 that the circumstantial evidence was sufficient to establish that Defendant installed the new HVAC system and replaced

the duct work on the old HVAC system in violation of the Injunction. Thus, ultimate finding 31 is supported by the evidentiary findings which are supported by competent evidence.

## D.  Statute of Limitations

Finally, Defendant asserts the trial court erred by finding him in criminal contempt because criminal contempt is a misdemeanor subject to a two-year statute of limitations. According to Defendant, the statute of limitations had run because the alleged violations occurred prior to 30 May 2019 and Plaintiff's motion for order to show cause was filed on 26 May 2022, more than two years later. We disagree.

In support of his proposition, Defendant directs our attention to two North Carolina statutes. *See* N.C. Gen. Stat. §§ 15-1(a) and 14-1 (2023). Section 15-1 provides the two-year statute of limitations period for misdemeanors stating, "crimes of deceit and malicious mischief, and the crime of petit larceny . . . , and all misdemeanors except malicious misdemeanors, shall be charged within two years after the commission of the same, and not afterwards[.]" N.C. Gen. Stat. § 15-1(a). According to section 14-1:

> A felony is a crime which: (1) Was a felony at common law; (2) Is or may be punishable by death; (3) Is or may be punishable by imprisonment in the State's prison; or (4) Is denominated as a felony by statute. *Any other crime is a misdemeanor.*

N.C. Gen. Stat. § 14-1 (emphasis added).

Defendant attempts to harmonize these statutes as follows: because criminal contempt is not a felony, it must be a misdemeanor subject to a two-year statute of limitations. We are not persuaded by Defendant's argument.

First, Defendant's assertion presumes that criminal contempt is, by nature, a "crime" and is therefore encompassed by the "*Any other crime*" language of section 14-1. *See* N.C. Gen. Stat. § 14-1 (emphasis added). Although an indirect criminal contempt proceeding is "punitive or 'criminal in . . . *nature*,'" *State v. Reaves*, 142 N.C. App. 629, 633, 544 S.E.2d 253, 256 (2001) (emphasis in original), contempt itself remains "of its own kind or class," *see Burrow*, 248 N.C. App. at 670, 789 S.E.2d at 928 (citation omitted). Indeed, criminal contempt is not tantamount to a traditional "crime."

To justify affording contemnors the same "constitutional safeguards" as those provided to ordinary criminal defendants, our courts have treated criminal contempts as "crimes." *See O'Briant*, 313 N.C. at 435, 329 S.E.2d at 373. However, in other instances, criminal contempt receives different treatment. For example, criminal contempt has been defined as a "petty offense with no constitutional right to a jury trial," *Blue Jeans Corp. v. Amalgamated Clothing Workers of Am., AFL-CIO*, 275 N.C. 503, 511, 169 S.E.2d 867, 872 (1969), and prior adjudications for criminal contempt do not "constitute [] 'prior conviction[s]' for purposes of the [Structured Sentencing] Act," *Reaves*, 142 N.C. App. at 633, 544 S.E.2d at 256. Thus, despite an indirect

criminal contempt proceeding resembling a conventional criminal bench trial, it cannot be said that criminal contempt is encompassed by the *"Any other crime"* language of section 14-1.

Second, Defendant's argument overlooks the fact that this Court has expressly rejected the notion that criminal contempt is a misdemeanor. *See Burrow*, 248 N.C. App. at 669–70, 789 S.E.2d at 928–29. The defendant in *Burrow* advanced a similar argument to the one Defendant presents here. *Id.* at 669, 789 S.E.2d at 928. There, the defendant argued his six consecutive thirty-day terms of imprisonment based on six findings of direct criminal contempt was improper because criminal contempt is a Class 3 misdemeanor for which consecutive sentences are impermissible. *Id.* at 669, 789 S.E.2d at 928. We rejected this argument, noting that it "fail[ed] to take into account the entirety of [section] 14-3, which dictates that the offense *actually be a misdemeanor* before labeling it a Class 3 misdemeanor." *Id.* at 670, 789 S.E.2d at 928 (emphasis added). Ultimately, we determined the defendant's sentences could run consecutively because "a criminal contempt adjudication is *not a misdemeanor* in North Carolina." *Id.* at 670, 789 S.E.2d at 929 (emphasis added) (quoting *State v. Luke*, 207 N.C. App. 749, 701 S.E.2d 403 (2010) (unpublished)).

Finally, the statutory provisions governing contempt are confined to their own chapter of our General Statutes—Chapter 5A. *See* N.C. Gen. Stat. § 5A (2023). Conversely, "the General Assembly has confined provisions of our 'penal law,' . . .

primarily to Chapter 14 of the General Statutes." *Reaves*, 142 N.C. App. at 633, 544 S.E.2d at 256. There is no mention of a statute of limitations period in Chapter 5A. *See* N.C. Gen. Stat. § 5A. It is the role of the General Assembly, not this Court to proscribe such a limitation. *See State v. Scoggin*, 236 N.C. 19, 23, 72 S.E.2d 54, 57 (1952) ("It is our duty to interpret and apply the law as it is written, but it is the function and prerogative of the Legislature to make the law.").

Accordingly, because a criminal contempt adjudication is not a misdemeanor and there is no applicable statute of limitations period for criminal contempt, Defendant's statute of limitations argument fails.

## V. Conclusion

In sum, the trial court properly denied Defendant's motion to dismiss for insufficient evidence and had jurisdiction to enter the Order. Ultimate finding 31 is supported and the criminal contempt adjudication was not barred by a two-year statute of limitations period. Accordingly, we affirm the Order.

AFFIRMED.

Judges ARROWOOD and STADING concur.